Birchard, C. J.
This motion presents the question whether the Little Miami Rail Road Company having once located and constructed their road, have the power to re-locate and re-construct it on other and distinct ground ? An answer to the inquiry must be given from the charter of the Company and the amendments which it has received. Unless the power is therein expressly granted or necessarily and fairly to be implied from the express grants it cannot be exercised. The first section of the respondent’s act of incorporation authorized the construction of a rail road terminating at Cincinnati, and at such a point in the city as might be agreed on by the City Council of Cincinnati and the directors of the Company. The tenth section required *350 the Company ,to select the route on which the road was to be constructecl> as soon as practicable, after making the examina- and surveys necessary to enable them to select the most advantageous line.
The twelfth section gives “ authority to vary the route and change the location after the first selection had been made.
1st. Whenever a better and cheaper route could be had.
2d. Whenever “ any obstacle to continue said location was found, either by difficulty of construction or procuring right of way at a reasonable cost.” 34 Local L. p. 4Ó4.
It is in virtue of the provisions of this last section that the right to re-locate the road and condemn the complainants property, is claimed.
Now, a moment may be well spent in considering the nature of the rights conferred, and the trust devolved upon the Company by their act of incorporation. Section 11 confers, in express terms, the right to enter upon, and take possession of, and use all such lands and real estate as may be indispensable for the construction and maintenance of said rail road, and the accommodations requisite to, and appertaining to them. In case of disagreement of the owner as to the price of any lands or materials required for the road, provision was made for the condemnation of the lands or materials, by an inquest of freeholders, &,c., against the owner’s consent. True, the valuation of the inquest was required to be tendered or paid to the owners, or deposited in some bank to their credit, before the title to the lands and materials could vest in the Company. These grants of power are in derogation of private right, and would be totally void but for the provisions of the constitution, which make private rights subservient to the public welfare. Admitting that the interest of the public were such as to warrant this extensive delegation of the right of sovereignty, or right of eminent domain, and it is quite certain that the power should be clearly expressed, or necessarily and clearly implied from what is clearly expressed in the grant. In such case the rule of construction should be strict. No State can ever be presumed to *351 have parted with a portion of its sovereignty even to her own citizens, without a grant affirmatively made. And no derogatory of private right should gain anything by forced struction. The general rule requiring grants of this nature to be strictly construed is, in our opinion, the only safe one, and it should be adhered to with unyielding tenacity.
The respondents suppose a different rule of construction should prevail, and cite the decision in Bates v. Cooper, 5 Ohio Rep. 119. In that case it was contended that the act to provide for the internal improvement of the State by navigable canals, simply authorized the taking of materials to prepare the canal for public use, but conferred no authority to take materials for repairs subsequent to the completion of the canals. This Court, as then constituted, did not so construe that statute. And the learned Judge, who reported the opinion, says, that such a construction would be altogether too narrow for the liberal policy of that act. Yet it is strongly intimated, on page 120, that if the officers and agents in that case had not been exclusively public, engaged in the constructionof a great public improvement, for the sole benefit of the State, a different rule of construction would have prevailed. That had they been private corporators they would “ have been restricted to a rigid exercise of the literal power granted in their act of incorporation, to appropriate to their public structure private property.”
Whether in point of fact any distinction should exist in the,rules of construing the statutes providing for our system of public improvements and those providing for public roads by private corporators, is a question not now before us, nor does it seem that the case of Bates v. Cooper turned upon the question that the learned Judge discussed.
That statutes of this nature should be strictly construed, is a position abundantly sustained by the cases cited by complainants’ counsel.
This case stands thus: The corporators had the power to locate and construct a rail road. They could exercise this right but once without a further grant. To accomplish this object a *352 most important attribute of sovereignty was bestowed upon them by the Legislature — the extraordinary reserved power of subjecting the property of private individuals to a public use. If it was intended that this should be a continuing power, one that might be exercised, and re-exercised again and again, as often as might suit the convenience of this Company, the Legislature should have so declared in express terms. They have not done so. The 12th section of the charter, when speaking of the right to vary the route and change the location, treats the road as still being in an unfinished state, as the location of a route for a road to be constructed, not a location of a road already completed. Even this right to change the location is restricted by the 12th section to the cases therein specified. It was to be exercised first, when the difficulty of construction interposed an obstacle ; a difficulty which could not happen after the completion of the structure. Or secondly, when the procuring of a right of way at a reasonable cost presented an obstacle. This could only happen before the completion of the road upon the route first located, for when the right of way had been secured and the structure finished thereon, the obstacle arising from the cost of that right of way, must have been met and.overcome, and could no longer exist. Or thirdly, when a cheaper and better route could, be had. This cause of changing the route also looks to a time prior to the completion of the structure. The new route must be both better and cheaper. The change here intended, must be a change of location merely, not a change of a finished road, because the cheapness has reference solely to the cost of construction, while the word better refers to the ultimate utility and convenience as a source of profit and public accommodation. If not so, why employ the word cheaper in reference to a finished and complete thing ? The term evidently has reference to the cost of the structure, and would be inappropriate to express the idea intended, if the object was to confer the power to make both a different location and a road altogether new.
The completion of this road upon the route first located, ex *353 hausted all the power of the Company. The force of the grant was then spent; and no matter how necessary the change of location may be at present, the Company must seek authority to make that change in some Legislative enactment, aside from their act of incorporation.
Counsel for respondent claim authority for the act complained of, under the 11th section of their act of incorporation. If we gather correctly their meaning, the validity of their argument depends upon the construction of the word maintenance, as used in this section. “ It shall be lawful for the said Company to enter upon, and take possession of, and use all such lands, and real estate, as may be indispensable for the construction and maintenance of said Rail Road,” &c.
They well say that the object of the Legislature was to have this road built, and maintained, as a road, and to confer the necessary power to build and maintain it, as a road suitable for the business of the community. But it by no means follows that this section authorizes the change of road set forth in the bill.
Two things are indicated too plainly by the language here employed, to admit of confusion. To build or construct a Rail Road, is one thing; to maintain the structure, after it is erected or built, is another. The word maintenance has reference to ■ the powers to be'exercised after the completion. This is the natural force of the expression.* Any other meaning is unnatural, and could not be inferred from the language of the act, without departing from the common acceptation of the words of the section, and without the least excuse for the departure.
It would be a matter of regret, if the utility of this improve- ■ ment were to be seriously impaired, by reason of an error in its original location. Yet even that would be no reason for permitting the corporation, under assumed powers, to violate private rights. It is the duty of the Court in such a case, -to keep them strictly within their granted powers; and if the necessity of the case requires an enlarged power, to force them to seek it at the hands of the Legislature.
*354 Inasmuch as the facts presented in the answer and proofs, show that the contemplated change of road will be beneficial to the public, we have come to this conclusion the more cheerfully, from the consideration that an act of the General Assembly, of a date subsequent to the commencement of the proceedings complained of, (Yol. 46, Gen. Laws, p. 44, <§> 10,) has made suitable provision for the contingency.
Notice to dissolve refused, and injunction continued.