[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 98.]

DALOIA, TRUSTEE, APPELLANT, *v*. FRANCISCAN HEALTH SYSTEM OF CENTRAL

OHIO, INC. ET AL., APPELLEES.

[Cite as *Daloia v. Franciscan Health Sys. of Cent. Ohio, Inc*., 1997-Ohio-402.]

*Trusts—Doctrine of cy pres construed—Doctrine of deviation distinguished from doctrine of cy pres—In applying doctrine of deviation, court cannot change original charitable objective of settlor or divert the bequest to an entity with a charitable purpose different from the purpose set forth in the trust instrument.*

1.  The doctrine of *cy pres* is a saving device applicable to charitable trusts and it permits a court to direct the application of the trust property to a charitable purpose different from that designated in the trust instrument.

2.  The doctrine of deviation is distinguishable from the doctrine of *cy pres* in that the doctrine of deviation is applicable to both private and charitable trusts and it is concerned solely with the administration of the trust.

3.  In applying the doctrine of deviation, a court cannot change the original charitable objective of the settlor or divert the bequest to an entity with a charitable purpose different from the purpose set forth in the trust instrument.

(No. 96-269—Submitted April 1, 1997—Decided June 25, 1997.)

APPEAL from the Court of Appeals for Franklin County, No. 95APE06-808.

————————————

{¶ 1} On April 20, 1985, Bertha Crisafi and Clara Monte, sisters, executed separate trusts to provide for, among other things, the distribution of their estates at the time of their deaths. In their trusts, Bertha and Clara instructed that specified

percentages of the balances of their estates were to be distributed to, among others,[1] "ST. ANTHONY MEDICAL CENTER, Columbus, Ohio for use among the sick-poor in accordance with the hospital's mission."[2] Bertha died in 1987 and Clara died in 1989. Bertha and Clara's nephew, appellant Leonard R. Daloia, was a named co-trustee in both trusts.

{¶ 2} On September 12, 1990, appellant distributed $259,190.66 to appellee Franciscan Sisters of the Poor Foundation at Central Ohio ("FSOP"). The money represented thirty-three and one-third percent of the balance of Bertha's estate and twenty-five percent of the balance of Clara's estate. FSOP was established to accept charitable gifts and it was directly affiliated with appellee Saint Anthony Medical Center, Inc. ("Saint Anthony"). Saint Anthony was a nonprofit hospital.

{¶ 3} On the same date that appellant presented the funds to FSOP, a "distribution document" was executed with respect to the gifts. The document noted that Saint Anthony was the designated recipient of the funds. The document also established guidelines for the use and handling of the money.[3] Appellant was

---

1. Bertha and Clara also instructed that specified percentages of the balances of their estates were to be distributed to "OHIO STATE UNIVERSITY, Columbus, Ohio to be used [for] (1) research and education of human heart problems and (2) for research and education of pulmonary disorders."

2. The "mission statement" of Saint Anthony provided that:
   "We are a community of women and men dedicated to continuing the healing ministry of Jesus.
   "We strive for excellence in providing service to all who need us.
   "We are energized by an atmosphere of joy, mutual respect and compassion to find better ways of serving."

3. The distribution document set forth that the gifts from the trusts "will create a new fund titled the 'Crisafi/Monte Endowment Fund,'" and that the money was "to provide for the sick, poor in accordance with the hospital Mission of Saint Anthony Medical Center." The document also set forth that "[t]he principal will be invested in the Foundation Endowment Fund under the rules and regulations adopted by the Board of Trustees of the Franciscan Health System of Central Ohio and the Franciscan Sisters of the Poor Foundation with the right to invest and to reinvest as occasion dictates," that the income derived from the money would be used in a manner determined annually by the "Franciscan Sisters of the Poor Foundation at Central Ohio Executive Committee," that ten percent of the gross annual income would be added to the principal, and that the 1990 income from the money would be used to support a new patient assistance program to assist patients who are unable to pay their medical expenses. In addition, the document provided that the funds could be

involved in the preparation of the document and he signed it in his capacity as trustee of the trusts and as the chairman of FSOP. The document was also signed by David Valinsky, who was the executive director of FSOP, and by Matthias Maguire, who was the president of appellee Franciscan Health System of Central Ohio, Inc.

{¶ 4} In January 1992, Saint Anthony was sold to an unrelated health care institution. Appellant had met with Valinsky, Maguire, and others to determine the proper disposition of the funds bequeathed to Saint Anthony, but they were unable to agree upon a plan of distribution. The funds are currently being held by appellee Franciscan Sisters of the Poor Foundation, Inc.

{¶ 5} On November 6, 1992, appellant filed a complaint against appellees in the Franklin County Court of Common Pleas. In the complaint, appellant requested that he receive an accounting of the funds, that the funds be returned to him, and that a receiver be appointed "to collect said funds from Defendants and turn said funds over to Plaintiff and The Columbus Foundation, and/or The Ohio State University Hospital."

{¶ 6} Appellees answered the complaint. In their answer, appellees asserted that the funds in question should be distributed "to St. Elizabeth Medical Center, Inc. in Dayton, Ohio, which is a Franciscan medical facility providing care to the sick-poor located very near St. Anthony Medical Center." Thereafter, appellant was granted leave by the trial court to name the Ohio Attorney General as a party defendant.[4]

---

commingled "with the National Franciscan Foundation investments if the return is higher than local investment strategies," and that an annual report detailing the use and the growth of the money should be presented to the trustee.

4. The trial court also granted a motion by the Attorney General to intervene in the case. The trial court determined that the Attorney General was a necessary party pursuant to R.C. 109.25.
     R.C. 109.25 provides:
     "The attorney general is a necessary party to and shall be served with process or with summons by registered mail in all judicial proceedings, the object of which is to:

**{¶ 7}** The matter was referred to a referee (magistrate) in accordance with Civ.R. 53. On April 4 and 5, 1994, the case was tried to the referee. At the hearing, Valinsky testified that the hospital nearest to Saint Anthony that provided care for the "sick-poor" in accordance with the "Franciscan mission" was Saint Elizabeth Medical Center ("Saint Elizabeth") in Dayton, Ohio. Appellant did not refute this testimony. In addition, appellant did not present any evidence that there were hospitals within the Columbus, Ohio area that were capable of providing medical care in accordance with the missions of Saint Anthony and Saint Elizabeth.

**{¶ 8}** Subsequently, the parties submitted briefs in support of their positions. Appellant sought to introduce additional evidence that there were certain entities within the Columbus, Ohio area with missions similar to Saint Anthony's. Appellant also filed a motion with the trial court, requesting that the court allow him to "reopen" the matter and present this additional evidence.

**{¶ 9}** On July 8, 1994, the trial court denied appellant's request to reopen the matter. The trial court concluded essentially that appellant could not use his brief as a vehicle to submit additional evidence that could have been presented during the hearing before the referee. Thus, the trial court instructed the referee not to consider such additional evidence when rendering her report and recommendation.

---

"(A) Terminate a charitable trust or distribute assets;

"(B) Depart from the objects or purposes of a charitable trust as the same are set forth in the instrument creating the trust, including any proceeding for the application of the doctrine of cy pres or deviation;

"(C) Construe the provisions of an instrument with respect to a charitable trust;

"(D) Determine the validity of a will having provisions for a charitable trust.

"A judgment rendered in such proceedings without service of process or summons upon the attorney general is void, unenforceable, and shall be set aside upon the attorney general's motion seeking such relief. The attorney general shall intervene in any judicial proceeding affecting a charitable trust when requested to do so by the court having jurisdiction of the proceeding, and may intervene in any judicial proceeding affecting a charitable trust when he determines that the public interest should be protected in such proceeding."

**{¶ 10}** On July 12, 1994, the referee issued her report. In her report, the referee recommended that the trial court apply the doctrine of deviation and order that the bequests designated to Saint Anthony be distributed to Saint Elizabeth. The referee concluded that the sale of Saint Anthony made it impossible to comply with the express terms of the trust instruments and that the hospital nearest to Saint Anthony, with the same mission of caring for the poor, was St. Elizabeth.

**{¶ 11}** Appellant filed objections to the referee's report. On April 11, 1995, the trial court overruled appellant's objections, adopted the referee's recommendation, and requested that appellees submit a final judgment entry for the court's approval. On April 24, 1995, appellant filed a motion for a new trial.

**{¶ 12}** On June 5, 1995, the trial court entered final judgment in favor of appellees with respect to the April 11, 1995 decision, and ordered:

"This matter having been tried before a referee of this Court and this Court having adopted and approved the report and recommendation of its referee dated July 12, 1994 over the objection of plaintiff, hereby enters judgment in favor of defendants and against plaintiff.

"The Court orders that the defendant, Franciscan Sisters of the Poor Foundation, Inc., cause the funds received from the Bertha Crisafi Trust and the Clara Monte Trust to be distributed to St. Elizabeth Medical Center, Inc. to be used among the sick poor in accordance with the mission of St. Elizabeth Medical Center, Inc."

**{¶ 13}** On June 13, 1995, appellant again filed a motion for a new trial. On June 26, 1995, appellant appealed the trial court's June 5, 1995 judgment entry to the Court of Appeals for Franklin County. The court of appeals held that the trial court did not abuse its discretion in awarding the bequests to Saint Elizabeth.[5]

---

5. While appellant's appeal regarding the trial court's June 5, 1995 judgment was pending before the court of appeals, the trial court, on August 15, 1995, ruled on appellant's motions for a new trial. On August 15, 1995, the trial court denied appellant's April 24, 1995 motion for a new trial and

**{¶ 14}** The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Lane, Alton & Horst* and *Jack R. Alton; Chester, Willcox & Saxbe* and *Craig Wright*, for appellant.

*Dinsmore & Shohl* and *Timothy A. Tepe*, for appellees Franciscan Health System of Central Ohio, Inc., Saint Anthony Medical Center, Inc., Franciscan Sisters of the Poor Foundation at Central Ohio, and Franciscan Sisters of the Poor Foundation, Inc.

*Betty D. Montgomery*, Attorney General, and *Sherry M. Phillips*, Assistant Attorney General, for appellee Attorney General.

_____

**DOUGLAS, J.**

**{¶ 15}** The primary question presented for our consideration is whether the funds bequeathed to Saint Anthony in the trust instruments should, given the change in circumstances, be distributed to Saint Elizabeth in Dayton, Ohio. The trial court and court of appeals concluded that the sale of Saint Anthony made it impossible to comply with the express terms of the trusts and, as a result, the gifts should be awarded to Saint Elizabeth under the doctrine of deviation. The trial court and court

---

concluded that appellant's June 13, 1995 motion was moot. The issue of whether the trial court had jurisdiction to rule on appellant's motions for a new trial is not a relevant factor in our decision today. However, we point out that when an appeal is pending before a court of appeals, the trial court is divested of jurisdiction except to take action in aid of the appeal. In other words, "the trial court retains all jurisdiction not inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." *Howard v. Catholic Social Serv. of Cuyahoga Cty., Inc.* (1994), 70 Ohio St.3d 141, 146, 637 N.E.2d 890, 895, citing *Yee v. Erie Cty. Sheriff's Dept.* (1990), 51 Ohio St.3d 43, 44, 553 N.E.2d 1354, 1355, and *In re Kurtzhalz* (1943), 141 Ohio St. 432, 25 O.O. 574, 48 N.E.2d 657, paragraph two of the syllabus. Moreover, we have specifically held that, with respect to a Civ.R. 60(B) motion for relief from judgment, an appeal divests the trial court of jurisdiction to consider the motion, and that "[j]urisdiction may be conferred on the trial court only through an order by the reviewing court remanding the matter for consideration of the Civ.R. 60(B) motion." *Howard*, 70 Ohio St.3d at 147, 637 N.E.2d at 895.

of appeals also determined that when appellant had distributed the gifts on September 12, 1990, appellant had fulfilled his duties as a trustee under the terms of the trusts. Therefore, the trial court and court of appeals concluded that appellant did not retain any further discretion to control the final disposition of the gifts after that date. We agree with the conclusions reached by the trial court and court of appeals. Accordingly, we affirm the judgment of the court of appeals.

I

{¶ 16} To begin, we note that the powers and duties of a trustee are controlled by the terms of the trust instrument. See IV(A) Scott, Law of Trusts (4 Ed. Fratcher Ed.1989) 320, Section 380 ("The trustees of a charitable trust, like the trustees of a private trust, have such powers as are conferred on them in specific words by the terms of the trust or are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust."). Thus, a "fundamental [tenet] for the construction of a * * * trust is to ascertain, within the bounds of the law, the intent of the * * * settlor." *Domo v. McCarthy* (1993), 66 Ohio St.3d 312, 314, 612 N.E.2d 706, 708. "Generally, when the language of the instrument is not ambiguous, intent can be ascertained from the express terms of the trust itself." *Id*.

{¶ 17} The trust instruments are virtually identical in both form and content. In particular, Article IV of Bertha's trust and Article IV of Clara's trust both provide in part that "[t]he co-trustees and any successors of the trust established by this instrument shall serve without bond and, in addition to those powers granted by law, *and until actual distribution of the trust property*, shall have the following rights, powers, duties, and immunities to be exercised without court order or other authority upon such terms and conditions and at such times as the trustees determine in their absolute discretion[.]" (Emphasis added.) Interpreting this italicized language, the trial court held, and the court of appeals agreed, that appellant did not retain any further authority to control the disposition of the funds after he had

distributed the gifts on September 12, 1990. Specifically, the court of appeals held that "the trust agreements clearly provided that appellant's trustee powers ended upon distribution of the gifts to St. Anthony. The trust agreements did not give appellant the power to change beneficiaries. Nor did the trust agreements grant a power to direct and guide the actual use of the monies after distribution."

{¶ 18} Notwithstanding, appellant asserts that Saint Anthony never actually received the gifts from the trusts because the funds have been "impounded in the investment accounts of Defendants in Brooklyn, New York." Therefore, according to appellant, he still has the authority to control the ultimate disposition of the funds because an "actual distribution of the trust property" has never occurred. We disagree.

{¶ 19} Appellant's interpretation of the trust instruments is inconsistent with the distribution document executed by appellant on September 12, 1990. The document specifically noted, and appellant alleged in his complaint,[6] that the gifts had been distributed by him to Saint Anthony on September 12, 1990. The document also provided that the funds could be transferred to the national organization (appellee Franciscan Sisters of the Poor Foundation, Inc.) if the money would earn a higher return than if invested locally. Appellant played an instrumental role in the preparation of the distribution document and he signed it in his capacity as a trustee of the trusts and as the chairman of FSOP. It is apparent that the money has remained with the national organization because of the sale of Saint Anthony and because of this ongoing lawsuit.

{¶ 20} Accordingly, we agree with the trial court and court of appeals that appellant's discretionary powers under the terms of the trust instruments ended when appellant distributed the gifts on September 12, 1990. We believe that this

---

6. In paragraph eight of the complaint, appellant alleged that "[s]aid gift of $259,190.66 from the Trust assets of Clara Monte and Bertha Crisafi was presented to Saint Anthony Hospital by Plaintiff, as Trustee, on September 12, 1990."

conclusion is consistent with the intent of the settlors as expressed in their trusts. At the time appellant distributed the gifts on September 12, 1990, Saint Anthony was operating in accordance with its mission of caring for the poor. Thus, because appellant's discretionary powers under the terms of the trusts ceased upon the *actual distribution* of the funds on September 12, 1990, appellant's contention that he still has the authority to control the ultimate disposition of the funds clearly lacks merit.

{¶ 21} Appellant also contends that the trial court and court of appeals erred in awarding the gifts to Saint Elizabeth. Appellant concedes that the sale of Saint Anthony has made it impossible to comply with the express terms of the trusts. In this regard, appellant does not challenge whether the bequests may be distributed to another institution. Rather, appellant asserts that it was his aunts' wishes to benefit only those "sick/poor in the inner city of Columbus." Therefore, appellant suggests that the funds should be distributed to a hospital located in the vicinity of Columbus, not Dayton, Ohio. Again, we disagree.

{¶ 22} Upon a reading of the entire trust instruments, and paying particular attention to the language granting the specific bequests to Saint Anthony, we are not convinced that Bertha and Clara intended that their gifts were to remain solely within the Columbus, Ohio area. We agree with the court of appeals that "[w]hile both trusts bequeathed money 'to ST. ANTHONY MEDICAL CENTER, Columbus, Ohio for use among the sick-poor in accordance with the hospital's mission,' there is no evidence that appellant's aunts intended the gifts to remain in Columbus." Appellant's position that his aunts intended that their gifts were to benefit only those individuals in the Columbus, Ohio area would perhaps be more persuasive if the language in the trusts ended after the language "to ST. ANTHONY MEDICAL CENTER, Columbus, Ohio." However, appellant's contention is weakened by the inclusion of the language in the trusts "for use among the sick-poor in accordance with the hospital's mission." Given this language, it appears

that Bertha and Clara did not intend to attach geographical barriers to their gifts. Rather, this plain and unambiguous language indicates that the settlors' underlying charitable objective was to help the poor who could not afford needed health care.

{¶ 23} In *McIntire's Admrs. v. Zanesville* (1867), 17 Ohio St. 352, a testator had executed a will placing a majority of his estate into a trust " 'for the use and support of a poor-school, which they [the trustees] are to establish in the town of Zanesville, for the use of the poor children in said town * * *.' " *Id*. at 353. Following the testator's death, the trustees erected a school for children who were poor. The school was then placed under the control of the city board of education and the school was discontinued as a school used exclusively for the poor. This court held, *inter alia*, that the trust property could not be used for the benefit of public schools because "it would be a perversion of the gift from the purpose of the donor, which was that it should be *wholly* expended for the benefit of the 'poor children' in the town or city." (Emphasis *sic*.) *Id*., 17 Ohio St. at 363. This court also concluded that the trust should not be terminated:

"But the purpose of the donor being to establish a 'school' or 'institution' for the use of poor children, and the state having supplied free schools for all children, what shall be done with the fund? Is the object of the charity exhausted, and must the fund be paid over to the heirs of the donor? We think not. We must look deeper than the mere words of this donation, and, through them, see its spirit. *We must inquire what the donor himself would now direct, had he lived to witness the present altered circumstances of the case. His object was to educate poor children to the extent of the fund bequeathed, and the 'school' or 'institution' provided for in the will, were mere means to that end.* Had circumstances remained unchanged, perhaps a free 'school' for poor children would have been the only necessary and appropriate instrumentality for that purpose, and the whole fund might have been exhausted, by thus merely remitting tuition fees to the scholars who should attend. But this *means* having become impracticable, can no other be

adopted to the same end? The law having anticipated and supplied the charity, so far as free schools are required, should not the trustees reach their hands further, and do more, and for that purpose resort to other *means* to effect, as far as the fund will go, the ultimate object of the donor? That object was, to instruct poor children in spite of their poverty. * * * This can be done by other *methods* than by merely remitting their tuition fees, which form but an inconsiderable part of the expenses of an education. * * *" (Emphasis omitted in part and added in part.) *Id.*, 17 Ohio St. at 363-364.

{¶ 24} Similarly, the specific bequests at issue here are to provide for the poor. More importantly, like the school in *McIntire*, Saint Anthony was simply a method or means to accomplish this charitable objective. In this regard, the trial court and court of appeals concluded that the funds from the trusts should be awarded to Saint Elizabeth under the doctrine of deviation. Appellee Attorney General urges the application of both the doctrines of *cy pres* and deviation.

## II

{¶ 25} The doctrine of *cy pres* and the doctrine of deviation both permit a court to deviate from the express terms of a trust instrument. However, both doctrines have distinct characteristics and their applications depend upon the facts and circumstances of the particular case. See *Findley v. Conneaut* (1945), 145 Ohio St. 480, 486-487, 31 O.O. 161, 164, 62 N.E.2d 318, 322.

{¶ 26} The *cy pres* doctrine is a saving device applied to charitable trusts. Scott, Law of Trusts, at 476-477, Section 399. "Roughly speaking, it is the doctrine that equity will, when the charity is originally or later becomes impossible, inexpedient, or impracticable of fulfillment, *substitute another charitable object which is believed to approach the original purpose as closely as possible.* It is the theory that equity has the power to revise a charitable trust where the settlor had a general charitable intent in order to meet unexpected emergencies or changes in conditions which threaten its existence." (Emphasis added.) Bogert, Trusts &

Trustees (2 Ed.Rev.1991) 95-96, Section 431. See, also, 2 Restatement of the Law 2d, Trusts (1959) 297, Section 399[7]; and Scott, Law of Trusts, at 476-477, Section 399 ("The principle under which the courts thus attempt to save a charitable trust from failure by carrying out the more general purpose of the testator and carrying out approximately though not exactly his more specific intent is called the doctrine of cy pres."). Thus, the doctrine of *cy pres* is a saving device applicable to charitable trusts and it permits a court to direct the application of the trust property to a charitable purpose different from that designated in the trust instrument.

{¶ 27} Under the doctrine of deviation, a court can "direct or permit a deviation from the terms of the trust where compliance is impossible or illegal, or where owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust." Scott, Law of Trusts, at 323, Section 381. See, also, *Papiernik* v. *Papiernik* (1989), 45 Ohio St.3d 337, 345, 544 N.E.2d 664, 672; and Restatement of Trusts 2d, at 273, Section 381.[8] The doctrine of deviation is distinguishable from the doctrine of *cy pres* in that the doctrine of deviation is applicable to both private and charitable trusts and it is concerned solely with the administration of the trust. The administration of a trust involves the methods of accomplishing the purposes of the trust. *Id.*, Comment *a*. Therefore, in applying the doctrine of deviation, a court cannot change the original charitable objective of

---

7. Restatement of Trusts 2d at 297, Section 399, provides:

   "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor."

8. Restatement of Trusts 2d, at 273, Section 381, states:

   "The court will direct or permit the trustee of a charitable trust to deviate from a term of the trust if it appears to the court that compliance is impossible or illegal, or that owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust."

the settlor or divert the bequest to an entity with a charitable purpose different from the purpose set forth in the trust instrument. *Id.* ("The question of the extent to which the court will permit or direct the trustee to apply the trust property to charitable purposes other than the particular charitable purpose designated by the settlor where it is or becomes impossible or illegal or impracticable to carry out the particular purpose involves the doctrine of cy pres * * *."). See, also, Scott, Law of Trusts, at 479-480, Section 399.

{¶ 28} In *Craft v. Shroyer* (1947), 81 Ohio App. 253, 272-273, 37 O.O. 77, 85, 74 N.E.2d 589, 598, the Second District Court of Appeals aptly set forth the general differences between the two doctrines:

"The cy pres doctrine is a rule of judicial construction under which the court is required to first find a general charitable intent in the instrument creating the trust; *the general charitable purpose of the settlor moves the court to substitute a different charitable purpose for the one which has failed. Cy pres is applied only in the field of charitable trusts, whereas, a court of equity may order a deviation in private as well as charitable trusts. * * * In ordering a deviation a court of equity is merely exercising its general power over the administration of trusts; it is an essential element of equity jurisdiction. In ordering a deviation the court does not touch the question of the purpose or object of the trust, nor vary the class of beneficiaries, nor divert the fund from the charitable purpose designated. * * ** The cy pres doctrine requires the exercise of a more extensive power than the ordinary power of a court of equity in ordering deviation. * * * The jurisdiction merely to vary the details of the administration of a trust is more liberally exercised, more firmly established and more widely recognized than the cy pres power of the court." (Emphasis added and citations omitted.)

{¶ 29} In the case at bar, the sale of Saint Anthony has made it impossible to comply with the express terms of the trust instruments. Nevertheless, the settlors' intentions are clear. Notably, the trusts did not limit the bequests to the

Columbus, Ohio area. To that end, the award of the funds to Saint Elizabeth will not change the settlors' underlying charitable objectives. Moreover, in awarding the funds to Saint Elizabeth, the funds will not be diverted to an entity with a charitable purpose different from that provided for in the trusts, nor will it vary the class of beneficiaries. Saint Elizabeth's mission statement is identical to Saint Anthony's. In this regard, we agree with the court of appeals that "[t]he trial court's order merely varied the means and methods of accomplishing the trusts' charitable objectives."

{¶ 30} Given the change in circumstances, we believe that a deviation from the express terms of the trust instruments is appropriate to carry out the settlors' charitable wishes. Saint Elizabeth should be allowed to use the funds for the "sick-poor." Therefore, under the facts and circumstances of this case, we find that the trial court and court of appeals did not err in applying the doctrine of deviation and in awarding the funds to Saint Elizabeth in Dayton, Ohio.

III

{¶ 31} As a final matter, appellant contends that the trial court committed reversible error in failing to take judicial notice of the ability of "local hospitals" to carry out the wishes of his aunts. Specifically, appellant asserts that "[t]he Trial Judge had a wide variety of hospitals within the inner city or even the city of Columbus that would have served as an appropriate vehicle for effectuating [the Settlors'] gift." Appellant also points out that he submitted affidavits from various hospital officials, which demonstrated "their willingness to take over the missions of the sick/poor in the vicinity of St. Anthony Medical Center." These affidavits were attached to appellant's April 24, 1995 motion for a new trial.

{¶ 32} The requirements pertaining to judicial notice are contained in Evid.R. 201 and Civ.R. 44.1. Evid.R. 201 concerns judicial notice of adjudicative facts. Civ.R. 44.1 pertains to judicial notice of domestic and foreign laws.

14

Appellant does not allege the applicability of Civ.R. 44.1. Rather, appellant's claims focus on various provisions of Evid.R. 201.[9]

{¶ 33} However, appellant did not raise this matter before either the trial court or the court of appeals. In any event, the "facts" alleged by appellant simply do not fit within the scope of Evid.R. 201. Evid.R. 201 is not applicable in this case, and any reliance by appellant on the rule is incorrect.

IV

{¶ 34} In conclusion, we find that the trial court and court of appeals properly awarded the bequests to Saint Elizabeth. Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————

9. Evid.R. 201 provides:

"(A) Scope of Rule. This rule governs only judicial notice of adjudicative facts; i.e., the facts of the case.

"(B) Kinds of Facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

"(C) When Discretionary. A court may take judicial notice, whether requested or not.

"(D) When Mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.

"(E) Opportunity to Be Heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

"(F) Time of Taking Notice. Judicial notice may be taken at any stage of the proceeding.

"(G) Instructing Jury. In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed."