OPINION
The following appeal and cross-appeal arise from a decision of the Portage County Court of Common Pleas, Domestic Relations Division, with respect to the divorce between appellant/cross-appellee, Don A. Bishop, Sr. and appellee/cross-appellant, Kimberly M. Bishop.[1]
Specifically, one or both of the parties assign errors with the trial court's determination of issues related to the division of property, spousal support, and child support. For the reasons that follow, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
The facts pertinent to this appeal are as follows. On September 25, 1976, the parties were married. Two children were born as issue of said marriage, Don Jr. (d.o.b. 1/9/77), now emancipated, and Matthew (d.o.b. 7/24/85).
On March 8, 1996, appellee filed a complaint for divorce in the Portage County Court of Common Pleas, Domestic Relations Division. Appellant subsequently filed an answer and counterclaim for divorce. Pending its final judgment of divorce, the trial court awarded appellee temporary custody of the parties' minor child with appellant retaining rights to visitation. Appellee was also given exclusive possession, control, and use of the marital home located in Kent, Ohio as well as the use of an automobile. Appellant was ordered to pay child and spousal support subject to any offset from income that appellee received from rental properties that the couple owned. Appellant was further enjoined from alienating, dissipating, encumbering, or transferring any marital asset including property associated with two business entities that were created during the marriage, Bishop Enterprises, Inc. ("Bishop Enterprises") and Bishop Brothers, Inc. ("Bishop Brothers").
Almost from the moment the parties filed for divorce, both appellee and appellant have repeatedly requested the trial court to punish the other party for contempt. Appellee accused appellant of entering the marital home and stealing some of her jewelry, her car keys, and miscellaneous documents. The record is replete with accusations that appellant has failed to make child and spousal support payments and appellee alleges that the marital home is soon to be lost in foreclosure proceedings. She further accuses appellant of being less than forthright with respect to discovery of his true income and the value of the business entities that he operates. On the other hand, appellant accuses his wife of failing to pay the bills for various marital expenses, interfering with his visitation of the parties' minor child, generally harassing him, and refusing to turn over property that belongs to him.
The trial court never formally found either party in contempt of its orders. During the course of these divorce proceedings, however, the record contains examples where a scheduled contempt hearing was averted by appellant agreeing to immediately pay his support arrearages and appellee agreeing to pay any past due debts upon receipt of said funds. The trial court reimbursed appellee for one item of jewelry that appellant was accused of stealing from the marital residence and warned appellee to stop harassing appellant if such harassment was, in fact, occurring. The court also ordered appellee to return some of appellant's personal property that she had within her possession. In a transcribed hearing of a contempt proceeding that did take place, the trial court indicated that it did not want to place either party in jail and warned of the "trap door" that would open if appellant continued his practice of failing to pay his support obligations on time. Appellant was further informed that the payment of his support obligations just prior to a contempt hearing did not make his actions any less contemptuous. Finally, the record on appeal contains statements by the trial court lamenting that records with respect to the operations of the marital businesses, records kept by appellant or in the possession of his "out-of-state" accountant, were "difficult" to obtain.
The parties agreed that appellee would be the primary residential caretaker of their minor child with appellant retaining companionship rights equivalent to no less than the court's standard order of visitation. Issues as to the division of marital property, appellant's income for purposes of determining spousal and child support, and the value of the marital businesses were all in dispute. A trial as to these issues occurred on March 13, 1998.
The parties stipulated, at least at the beginning of trial, as to the value of some of their marital property. Specifically, the parties agreed to the following valuations: the marital home, $65,000; the real estate acquired during the marriage for the parties' businesses, $200,000; rental property, $75,000; real estate claimed to be appellant's separate property ("the Ferguson Road property"), $30,000; value of assets for Bishop Enterprises, $308,800, not including a $1,200 tag trailer that remained in dispute.
At trial, appellee testified that she married appellant right after she graduated from high school in 1976, and that she has no further education. She is currently employed as a part-time waitress at Chicken Manor and as a monitor for the Kent City Schools. Her gross income for 1997, totaled $7,987.90, a figure that may or may not have included the approximate $120 per week that she earned in tips. Since filing for divorce, she has collected approximately $1,000 per month from some rental properties that the parties acquired during the marriage. She testified that she has a small pension through her employment at the Kent City School with a total value of $367.36 as of June 30, 1996.
In addition to discussing her yearly income and assets, appellee testified to her monthly expenses. These expenses included tuition costs for the parties' minor child to continue his education at a private school, an expense that the parties agreed upon prior to the filing for divorce. She further testified as to the vehicles, jewelry, and other personal property that the parties acquired during the marriage and the value of these items. She accused appellant of trying to hide the true value of the businesses created during the marriage and estimated their value at $3 million.
Finally, appellee claimed that the property appellant received as a gift from his parents, the Ferguson Road property, had been turned into marital property. She testified that the parties planned to build a home on the property sometime in the early 1980's and made improvements to the property until the house project was abandoned.
Appellant also testified as to property that the parties acquired during the marriage and estimated their value. This included testimony regarding the parties' largest assets, the two businesses created during the marriage, Bishop Enterprises and Bishop Brothers. Appellant explained that Bishop Enterprises is a leasing company that he uses to manage real estate and equipment for use with the other business, Bishop Brothers, a construction company. Appellant is the sole shareholder of both companies.
By all accounts, both businesses were profitable during the marriage as evidenced by tax returns showing several hundreds of thousands of dollars in equipment and gross sales. The amount of property acquired by the parties during the marriage is further testament to the profitability of the businesses. Since the filing for divorce, however, appellant testified that the businesses have gone through some tough times and tax returns indicate a steady decrease in the amount of equipment owned by the businesses and, correspondingly, gross sales. Appellant did not have the figures from his accountant for 1997, but he claimed that the businesses operated at a significant loss and had more debts than assets. He further asserted that he, personally, had negative income as a result of his efforts with the businesses in recent years, dates that seem to correspond to the filing of divorce.
Throughout the proceedings, appellant had great difficulty recalling the inter-workings of the two businesses, failing to even know the amount of rent collected by Bishop Enterprises for equipment and real estate leased to Bishop Brothers. Appellant claimed that his accountant, who lives in Michigan, handles all of the financial aspects of the businesses. Appellant could recall that the businesses now have negligible accounts receivables even though a document acquired through discovery revealed that Bishop Brothers had $75,784.82 in accounts receivables not including $30,000 not "entered into the system" as of July 26, 1996. However, appellant claimed that the financial pictures of the businesses are far worse today than from previous years. When asked to place a value on the businesses, appellant claimed that Bishop Enterprises had negative value while he "wouldn't pay a dime" for Bishop Brothers. Appellant explained that the businesses do not "generate a penny" without him and that if he was "out of the picture, there is nothing."
Contrary to the negative financial picture of the businesses as presented by appellant, evidence was submitted from a credit application that appellant executed in September of 1994, claiming that he had assets of nearly $1.7 million and liabilities of $180,000. He also claimed in the credit application that he drew a salary of $60,000 per year not including $12,000 that he receives in yearly rental income. However, appellant claimed that he was merely "puffing" in the credit application in an attempt to secure a loan.
Evidence was also presented that appellant scraped together enough cash to purchase a grand champion hog and grand champion steer at a local county fair in August of 1997. He also testified, counter to the stipulated value of assets entered into at the start of trial, as to the recent sale of some equipment including an older pickup truck and a dump truck and the recent acquisition of a new pickup truck and bulldozer for the businesses. Despite these purchases, appellant maintained that neither he nor the businesses could generate any positive income flow and asserted that the businesses' debts significantly outweighed their assets. However, in the division of property, appellant expressed his "need" for the court to award him several rental properties, located adjacent to property for the businesses, just in case the businesses expand in the future.
Finally, appellant testified he received the Ferguson Road property as a gift from his parents in lieu of receiving a college education. A copy of the deed executed by appellant's parents reveals that the real estate was transferred to appellant on July 30, 1982, or roughly six years after the parties were married. Appellant admitted that he and appellee were going to build a home on the parcel of real estate given to him by his parents and that a garage and septic system were built on the property during the course of the marriage. However, appellant claimed that the septic system failed, the parties subsequently abandoned their building plans, and that the property continually remained his "separate" property.
By judgment entry filed April 21, 1998, the trial court granted a decree of divorce and designated appellee as the primary residential caretaker and legal custodian of the parties' minor child subject to appellant retaining companionship rights no less than its standard order of visitation. For purposes of determining child support and spousal support, the trial court calculated appellant's gross annual income, as listed in the attached child support worksheet, at $72,000. Due to the length of the marriage, appellee's limited income potential, and her minimum monthly expenses, the trial court awarded her $2,000 per month in spousal support for a period of eighty-four consecutive months.
In computing appellant's income for purposes of its child support and spousal support calculation, the trial court noted that the income generated from his ownership interest in two corporate entities, while generating several hundred thousand dollars each year, was "fuzzy." The trial court made no other attempt at explaining the income figure attributed to appellant.
The trial court also attempted to equally divide the parties' marital property. The court held, without further comment, that the Ferguson Road property was appellant's separate property. The remainder of the property was found to be marital property and the trial court again struggled with the valuation to place on the two business entities. The court specifically rejected appellant's assertion that the businesses were worth nothing or less than nothing as he claimed, and similarly rejected appellee's claims that the businesses were worth $3 million. Ultimately, the court attached a value to this property of $344,500 by focusing on the parties' stipulated equipment valuation assets plus and minus certain pieces of machinery that appellant claimed to have just bought or sold.
The trial court awarded appellant all interest in the two corporations, the rental properties adjacent to the business property, as well as miscellaneous personal property. Appellee received the marital home and furnishings, miscellaneous personal property, a money judgment for her value of the two corporations, a judgment to further equalize the property division, and a judgment for arrearages that occurred from the court's temporary support orders. Both parties were responsible for payment of their own legal fees.
Since the filing of the final entry of divorce in this matter on April 21, 1998, a multitude of activity has occurred with this case at the trial court level including requests from both parties that the court find the other party in contempt. Furthermore, on May 11, 1998, appellant filed a motion for relief from judgment pursuant to Civ.R. 60(B). In his motion for relief from judgment, appellant alleged that the trial court erred in valuing the two corporate entities merely by "looking at the assets [of the two corporate entities and not] looking at the corresponding debts." Appellant also questioned how the trial court attributed $72,000 of yearly income to him as well as the corresponding awards of child and spousal support to appellee.
Appellant also filed a timely notice of appeal with this court, designated as Case No. 98-P-0055, from the lower court's final judgment of divorce. Appellee responded by filing a timely cross-appeal.
As the appeal was proceeding in this court, the trial court held a hearing on appellant's motion for relief from judgment and the challenges he made with regard to the court's valuation of the corporate entities as well as the income attributed to appellant. The trial court explained at the hearing the problem it had in making these valuations as follows:
 "You know, here's a case where the Court is put squarely in the middle. * * * [Appellee] says it's worth three million, * * * the day of the divorce [appellant] tells me it's worth not only nothing, but less than nothing. So, I can pick three million, I can pick less than nothing.
 "Now, I've also been around long enough to know that a going business paying its bills, with assets, that's buying and selling, that has a payroll, that provides you with an income, is not worth nothing. So, I have to pick a figure. I can't just say, `Well, I think I'll use 300, 800,' I can't do that. I've got to work with something in front of me.
 "I know that we were in here more than once trying to get business records, time after time after time we tried to get business records. I don't know whatever happened or how many records you got or didn't get, I don't know. All I know is it was difficult. * * *"
 The trial court judge then indicated that he did not remember the exact process he utilized to compute the value of the businesses or appellant's income. However, the trial court explained that the valuations "didn't just come from the figure fairy at night, * * * under [his] pillow" and that he would review the process to see if he could make any "adjustments."
By judgment entry filed July 7, 1998, the trial court asserted that appellant "provided the court with information" to show that it artificially valued assets recently purchased by appellant without considering the corresponding debts. The court further indicated that it included property in its prior award that was no longer owned by appellant or the two corporate entities. The trial court then modified its value of the businesses by $90,000 and granted appellant's motion for relief from judgment to the extent that the court previously overvalued the two corporate entities. As with its prior judgment entry of April 21, 1998, the trial court gave no additional insight into the process it utilized in reaching its calculations. From this judgment, appellant filed a timely notice of appeal, designated by this court as Case No. 98-P-0080. This court subsequently consolidated the parties' appeals for purposes of briefing, oral argument, and disposition.
Appellant now presents the following assignments of error:
 "[1.] The trial court erred to the prejudice of [appellant] and abused its discretion in that its finding that his income was $72,000 per year for purpose of computing spousal support and child support was not supported by the evidence and was arbitrary and unreasonable.
 "[2.] The trial court erred to the prejudice of [appellant] and abused its discretion in finding the value of his business corporations to be $254,500 in that it arbitrarily and unreasonably considered only the value of the assets of the corporations and failed to consider the amount of the liabilities of the corporations.
 "[3.] The trial court erred to the prejudice of [appellant] and abused its discretion in formulating the division of marital property in that it arbitrarily and unreasonably disregarded his marital debts and some of the marital property of [appellee]."
Appellee appears to be uncertain whether she wants to support the trial court's decision or seek the reversal of said decision. Appellee presents the following "cross-assignments of error" in "support" of the trial court's judgment:
 "[1.] The court erred in failing to consider the Ferguson Road property as a marital asset.
 "[2.] The trial court lacked jurisdiction to modify the Divorce Decree pending this appeal."
Appellee also has filed an appellate brief and submits the following "assignments of error" requesting "reversal" of the trial court's judgment:
 "[1.] The trial court lacked jurisdiction to enter its judgment entry of July 7, 1998 that modified the divorce decree during the pendency of this appeal.
 "[2.] The trial court abused its discretion when it modified the divorce decree without any additional evidence or testimony.
 "[3.] The appellant, by accepting portions of the property awarded in the divorce decree, has waived his appeal."
Before addressing the parties' arguments in this matter, we must resolve some procedural infirmities that threaten to make this messy divorce even more onerous. First, this court must determine the propriety of the trial court modifying its divorce decree when an appeal was pending with this court. As previously noted, the trial court issued a final entry of divorce on April 21, 1998. From this judgment, appellant took exception to the trial court's child and spousal support awards as well as the valuation of certain marital property. Appellant decided to air his complaints by filing a motion for relief from judgment with the trial court followed by an appeal to this court. While the appeal was pending in this court, the trial court issued a second judgment on July 7, 1998, changing its property division in this matter based on a subsequent determination on the valuation of the parties' two business entities.
The trial court's action in ruling on appellant's motion for relief from judgment was improper. This court has repeatedly held that once an appeal is perfected, a trial court is divested of jurisdiction over the matter except to take action in aid of appeal. Havre v. Havre (Aug. 16, 1996), Portage App. No. 95-P-0107, unreported, at 5-6; State v. Lorraine (Dec. 12, 1997), Trumbull App. No. 96-T-5494, unreported, at 5-6. As the Supreme Court of Ohio recently stated in Daloia v. Franciscan Health Sys.of Cent. Ohio, Inc. (1997), 79 Ohio St.3d 98, fn. 5:
 "[W]hen an appeal is pending before a court of appeals, the trial court is divested of jurisdiction except to take action in aid of the appeal. In other words, `the trial court retains all jurisdiction not inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment.' Howard v. Catholic Social Serv. of Cuyahoga Cty., Inc. (1994), 70 Ohio St.3d 141, 146, 637 N.E.2d 890, 895, citing Yee v. Erie Cty. Sheriff's Dept. (1990), 51 Ohio St.3d 43, 44, 553 N.E.2d 1354, 1355, and In re Kurtzhalz (1943), 141 Ohio St. 432, 25 O.O 574, 48 N.E.2d 657, paragraph two of the syllabus. Moreover, we have specifically held that, with respect to a Civ.R. 60(B) motion for relief from judgment, an appeal divests the trial court of jurisdiction to consider the motion, and that `[j]urisdiction may be conferred on the trial court only through an order by the reviewing court remanding the matter for consideration of the Civ.R. 60(B) motion.' Howard, 70 Ohio St.3d at 147, 637 N.E.2d at 895."
In this case, appellant never requested, and this court never conferred, jurisdiction with the trial court to rule on appellant's motion for relief from judgment. Consequently, the trial court was without jurisdiction to enter its decision of July 7, 1998, and that judgment is null and void. Lorraine at 6. Moreover, it cannot seriously be believed that the trial court's judgment of July 7, 1998, was in "aid of the appeal" when the trial court came up with an entirely different valuation of the parties' two corporate entities. This court has previously advised the Portage County Court of Common Pleas, Domestic Relations Division, that it may not accomplish a substantially different property distribution through a Civ.R. 60(B) motion after the issuance of a final decree of divorce. See Hughes v. Hughes (May 9, 1997), Portage App. No. 96-P-0196, unreported. We again remind the trial court that once an appeal has been perfected, the trial court is divested of jurisdiction until such time as the appellate court issues a decision or confers jurisdiction back with the lower court. While an appeal is pending, however, the lower court may take action toclarify or enforce its own judgments. Id. at 6.
Next, this court addresses the presentation of appellee's "cross-appeal" and "cross-assignments of error." Based on the resolution of the issues presented in appellant's appeal and our ruling with respect to the trial court's "decision" of July 7, 1998, the majority of the issues presented in appellee's "cross-appeal" and "cross-assignments of error" will be rendered moot pursuant to App.R. 12(A)(1)(c). However, we refer appellee to App.R. 3(C) and the attendant staff notes for the proper presentation of cross-assignments of error and cross-appeals. This court summarized this rule in Rzeszotarski v. Sanborn (June 7, 1996), Geauga App. No. 95-G-1906, unreported, at 19, as follows:
 "Cross-assignments of error are asserted for the purpose of preserving the relief granted in the trial court's judgment generally for reasons not advanced by the trial court, to further guard against reversal, and/or to obtain rulings on interlocutory orders, in the event the case is not affirmed. Cross-appeals are asserted for the purpose of obtaining different relief that that granted by the trial court."
In this case, appellee presented "cross-assignments or error" that are really in the nature of assignments of error in a cross-appeal. At the same time, appellee improperly presented some assigned errors in her cross-appeal. Although the presentation of appellee's arguments in this case will not affect the determination of this appeal, we again remind litigants that an appellate court is under no obligation to review assignments of error that are not submitted in proper form. Id. at 20.
Turning to the parties' assigned errors, both appellant and appellee submit errors with respect to the lower court's property division. Most notably, appellant claims that the trial court erred in determining the value of the parties' two corporate entities without considering evidence he presented with respect to the debts of the business. Appellant further complains that the trial court improperly calculated his yearly income in determining his spousal and child support obligations.
It is well established that an appellate court will uphold a trial court's decision with respect to domestic relations matters absent an abuse of discretion. Booth v. Booth (1989),44 Ohio St.3d 142, 144. One burden placed upon trial courts for the broad discretion they have in this area, however, is a requirement that the record or the court's judgment entry indicate the basis for its decision. As the Supreme Court of Ohio noted in Kaechelev. Kaechele (1988), 35 Ohio St.3d 93, paragraph two of the syllabus:
 "In allocating property between the parties to a divorce and in making an award of sustenance alimony, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law."
In reviewing the record on appeal and the trial court's divorce decree of April 21, 1998, this court is unable to discern the basis for many of the lower court's calculations. We recognize, as the trial court judge indicated, that his calculations did not appear one night under his pillow from the "figure fairy." We further acknowledge the court's characterization of appellant's actual or potential income as "fuzzy." By the same token, the trial court clearly expressed "difficulties" as to its determination of the true value of the parties' two corporate entities. However, for purposes of reviewing the record on appeal, this court does not have a clear focus as to the methods employed by the trial court in arriving at these calculations. Our focus on the lower court's decision making process was further blurred after the trial court decided to improperly "modify" his final entry of divorce while this appeal was still pending.
This court is further confused by the trial court's decision to grant appellant the Ferguson Road property as well as some miscellaneous personal property that it awarded the parties. Pursuant to R.C. 3105.171(B), the trial court is required to determine what constitutes the parties' separate property and what constitutes their marital property. The trial court is then required to divide the marital property equitably between the spouses with the separate property generally being returned to the spouse who acquired it. R.C. 3105.171(D).
Marital property is defined in R.C. 3105.171(A)(3)(a) as including:
 "(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 "(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 "(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage; * * *"
Separate property is defined by R.C.3105.171(A)(6)(a) to include:
 "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
"* * *
 "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse."
In this case, appellant's parents titled the Ferguson Road property to him after the parties were married. The parties' agreed that they had plans, at one time, to build a home on the property and had made improvements to the property during the course of the marriage. As with the trial court's determination of appellant's income and the value of the parties' assets, this court has no idea why the trial court, without comment, determined that the Ferguson Road property was appellant's "separate" property. In other words, this court does not know if appellant met his burden of proof that the property was intended as a gift solely to him and whether the court discounted the value, if any, of the improvements made to the property since the marriage. The trial court further divided certain miscellaneous personal property of the parties as if it were separate property without designating the reasons for its decision. If said miscellaneous items, such as jewelry given to appellee by appellant, were intended as gifts, the trial court must indicate that finding somewhere in the record.
We realize that the trial court may have had difficulties drafting its opinion of April 21, 1998, based on a possible lack of candor that one or both of the parties displayed during the course of these proceedings. We will not purport to tell the trial court how it may accurately determine the parties' actual or potential income or assets. Suffice it to say that the trial court has a variety of remedies at its disposal to deal with any crises that may arise. In the same vein, this court will not interfere with the parties' right to try their own case. However, this court has had prior dealings with parties who have been less than forthright with respect to the state of their finances and has affirmed decisions in other domestic relations cases where a trial court decided to impute income or assets upon a party or corporate entity. See Haas v. Haas (Dec. 31, 1997), Geauga App. No. 96-G-2034, unreported, at 14. Regardless of the approach utilized by the trial court in determining the parties' income, support awards, and property division, the trial court must give a basis for its decision to permit proper appellate review.
Based on the foregoing, we reverse and remand this matter to the trial court in order for it to draft a judgment entry consistent with the law as set forth in this opinion. In furtherance of this remand, the trial court may conduct any additional proceeding and make any property division, child support, or spousal support award that it deems necessary to resolve this matter. We wish to emphasize that the trial court need not feel constrained to justify its existing final judgment of divorce and may elect to issue a new property division, child or spousal support award, or allocation of attorney fees. The trial court may revisit all of these issues on remand, particularly in light of the ongoing motions for contempt that the parties have filed against one another and the apparent "difficulties" that one or both of the parties have displayed in fulfilling their obligations under the lower court's orders.
The costs of this proceeding are hereby assessed against appellant, Don A. Bishop, Sr.
 ____________________________ JUDGE JOSEPH E. MAHONEY
Ret., Eleventh Appellate District, sitting by assignment.
CHRISTLEY, P.J., dissents with Dissenting Opinion, NADER, J., concurs.
[1] For the sake of brevity, we will refer to appellant/cross-appellee as "appellant," and appellee/cross-appellant as "appellee."