[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This is an appeal from the Lake County Court of Common Pleas, Probate Division. Dr. Frank Veroni died on March 31, 1996. This case involves discussion and interpretation of several documents that might have affected the distribution of Dr. Veroni's property upon his death. These documents are: (1) the Last Will and Testament dated October 10, 1986 ("the 1986 will"); (2) The Frank Veroni Trust No. III dated October 10, 1986 ("Trust No. III"); (3) The Frank Veroni Trust No. II dated June 30, 1989 ("Trust No. II"); (4) The Frank Veroni Special Trust Agreement dated July 28, 1993 ("the Special Trust"); and (5) the Last Will and Testament dated March 13, 1996 ("the 1996 will"). Each trust is an intervivos trust.
Each of these documents was prepared by William A. Carlin ("William") and witnessed by William and his father, Clarence C. Carlin ("Clarence"), who practice law together in the firm of Carlin Carlin.[1] Clarence met Dr. Veroni in 1961, when Clarence was a trust officer at Central National Bank. Clarence became Dr. Veroni's financial advisor, and the two became close friends. William began to represent Dr. Veroni in legal matters in 1985.
In order to address all of the legal issues involved in this case, a detailed discussion of each of the foregoing trusts and wills is in order. The 1986 will named William and Clarence as co-executors of the estate. This will stated that each of the co-executors was to receive "the same fee as though each were serving as sole executor hereunder[.]" The dispositive provisions of the will left the bulk of Dr. Veroni's estate to three trusts. William and Clarence were co-trustees of each of these trusts, and Clarence and his wife, Marion L. Carlin, were beneficiaries of Trust No. II, and their children, including William, were successor beneficiaries. William and Clarence were the sole witnesses to the 1986 will.
On March 13, 1996, just three weeks before his death, Dr. Veroni executed the 1996 will, which was drafted by William, and witnessed by William and Clarence. The 1996 will was substantially similar to the 1986 will, except that it increased the bequest to Trust No. II from $175,000 to $250,000. Again, William and Clarence were named as co-executors and their compensation was the same as in the 1986 will. After Dr. Veroni's death, $250,000 was distributed to Trust No. II. William and Clarence, as co-trustees, used approximately $230,000 of the principal to pay off a commercial loan from Perrydale Partners, Inc., a corporation whose shareholders were Dr. Veroni, William, Clarence, and another person not identified in the record before this court.
William and Clarence were co-trustees of the Special Trust, which was created in 1993, and was funded by a $500,000 bequest. This trust provided that upon Dr. Veroni's death, his wife, Dinah Veroni, would receive all the net income from the trust. Moreover, she would receive "such amounts of principal that the trustee from time to time shall deem desirable to provide for her comfort and welfare." Upon Dinah Veroni's death, the remaining principal was to be transferred to Trust No. III.
William and Clarence were also co-trustees for Trust No. III, which provided that all income was payable to Dr. Veroni during his lifetime, with the principal being paid if the trustees deemed it necessary or advisable. During Dr. Veroni's lifetime, this trust held most of his assets. The funds in the trust totaled approximately $1,275,000. The trust provided that upon Dr. Veroni's death, the trustees were to pay the executor "such amounts from the principal of property then held by the trustee as my executor may request for the purpose of paying debts of my estate, bequests made by me under my Last Will and Testament, taxes including income, estate or any other tax liability due from me at the time of my death, administration expenses of my estate and any other amounts that may be payable as determined by my executor." Pursuant to the account submitted by Clarence and William to the probate court, $1,275,000 was transferred from Trust No. III to the estate to satisfy the specific bequests and to pay the debts and administration expenses of the estate.
Moreover, Trust No. III provided that after Dr. Veroni's death, and the payment of the foregoing expenses, the remaining principal was to be held as a charitable trust to be known as "The Frank Veroni Charitable Trust." William and Clarence, as co-trustees, were to distribute the remaining income and/or principal to certain qualified charities under the Internal Revenue Code. Trust No. III stated that income was to be paid quarterly, but did not mandate any payment of principal. According to the estate tax return filed by William and Clarence, $130,184.15 was taken as a charitable deduction from Trust No. III.
Trust No. II was created in 1989, naming William and Clarence as co-trustees, and states that income and principal were payable to Dr. Veroni. Upon Dr. Veroni's death, the trust provides that the income is payable to Clarence and his wife, Marion Carlin. Furthermore, the trust indicates that the principal is payable to Clarence and Marion Carlin for their comfort and welfare within the discretion of the trustees, William and Clarence. Upon the death of Clarence and Marion Carlin, the principal was to be distributed to their lineal descendants, one of whom is William. The 1996 will bequeathed $250,000 to Trust No. II.
Dr. Veroni died on March 31, 1996, and the probate court appointed Clarence and William as co-executors. In a judgment entry filed on February 11, 1997, pursuant to R.C. 2109.29, the probate court, on its own motion, ordered an investigation of the trust estate of Dr. Veroni, and appointed Richard T. Spotz ("Spotz"), an attorney, to conduct the investigation.
Spotz filed his investigator's report on April 18, 1997. He concluded that the bequests to the Carlins were void as against Ohio law and public policy. Specifically, he concluded that the $250,000 bequest to Trust No. II, which benefited the Carlins, was the product of undue influence. Moreover, Spotz determined that the bequests to the Carlins were void because they violated R.C.2107.15, which nullifies any bequest to a witness of the will. Spotz also stated that the provision of double executor fees and trustee fees was excessive and suggested that the probate court hold a hearing to determine the appropriate compensation for the executors of the estate. Finally, Spotz stated that the activities of William and Clarence relating to Dr. Veroni's estate was unethical. In summary, Spotz recommended that the probate court "set a hearing to determine whether or not the Carlins can rebut the presumption of undue influence, rule on the appropriate amount of attorney's fees and executor's commission and decide whether or not the $250,000.00 bequest to the Carlins should be returned to the estate."
On May 7, 1997, the probate court held an evidential hearing during which Spotz, William, and Clarence testified. In a judgment entry filed on May 9, 1997, the probate court held that: (1) William and Clarence were removed as co-trustees of Trust No. III; (2) William and Clarence were to file an accounting with respect to Trust No. III within 30 days of the May 7, 1997 hearing; (3) Barry Byron, an attorney, appellee in this matter, was appointed successor trustee of Trust No. III.
Furthermore, in a judgment entry field on May 19, 1997, the probate court held that: (1) the $250,000 bequest made to Trust No. II was void and that those funds should be returned to the estate; and (2) no executor or attorney fees should be paid from the Estate of Frank Veroni to William or Clarence. Pursuant to the request of Clarence and William, on June 27, 1997, the probate court filed findings of fact and conclusions of law in relation to its judgment.[2] Also, on May 19, 1997, William filed a disclaimer renouncing all interests in Trust No. II.[3]
On May 21, 1997, Byron filed a motion to remove William and Clarence as co-executors of Dr. Veroni's estate, without compensation, and on June 5, William and Clarence filed a joint resignation as co-executors of the estate. In a judgment entry filed on June 6, the trial court accepted the resignation of William and Clarence, and appointed Byron as Successor Administrator of Dr. Veroni's Estate, WWA, who is appellee in this matter.
Also, on June 6, 1997, William and Clarence filed the first and final accounting of Trust No. III. On July 25, 1997, Byron filed the following exceptions to the accounting: (1) that the distribution of $250,000 to Trust No. II should be returned to Trust No. III, with interest; (2) the payment of the trustee fee of $12,584.23 to Clarence and William was improper and that payment should be returned to Trust No. III; (3) the payment of an investment advisor fee to Clarence was improper and should be returned to Trust No. III; and (4) the payment of attorney fees of $5,506.25 paid to Attorney Richard Henning, who represented Clarence and William in the proceedings to remove them as co-executors, was improper.[4]
Furthermore, on July 23, 1997, Clarence filed an account of the Estate of Frank Veroni. Byron, as successor executor of Dr. Veroni's estate, filed exceptions to the account. The only exception to this account that is at issue in this appeal is an allegation that the payment of executor fees to Carlin Carlin was unauthorized, illegal, and improper. Thus, appellee, Barry Byron, as successor executor of the Estate of Frank Veroni, asserted that that fee must be returned to the estate.
On September 17, 1997, the magistrate conducted a hearing in relation to the exceptions to the final account of the estate of Dr. Veroni and to the final account of Trust No. III. At the hearing, William testified that on May 10, 1996, he transferred a $250,000 bequest directly from Trust No. III to Trust No. II, and that that money was never a part of Dr. Veroni's estate. Clarence stated that he was paid $7,043 for his duties as an investment advisor for Trust No. III after Dr. Veroni's death. Moreover, Clarence and William testified that they received $12,584 in trustee fees.
On October 9, 1997, the magistrate decided: (1) the 1996 will did not give William and Clarence "the authority to invade the trust corpus of Trust No. III"; (2) William and Clarence did not have the authority to transfer funds from Trust No. III to Trust No. II; (3) William and Clarence were negligent in making an unauthorized and improper transfer of $250,000; (4) the distribution of $250,000 from Trust No. III to Trust No. II "completely bypassed the estate, making the account inaccurate and fraudulent"; (5) the $250,000 transfer from Trust No. III to Trust No. III should be returned to Trust No. III; (6) William and Clarence should pay ten percent annual interest on the $250,000 from May 1, 1996, until June 30, 1997; (7) William and Clarence should not be compensated in any manner as either investment advisor or trustee; (8) the payment of attorney fees in the amount of $5,506 from Trust No. III to Attorney Richard Henning by William and Clarence was unauthorized and improper and that that payment, $5,506 should be returned to Trust No. III.
Clarence and William filed "Preliminary Objections" to the magistrate's report on October 27, 1997, and then filed "Final Objections" on November 12. In a judgment entry filed on December 30, 1997, the trial court overruled the objections of William and Clarence, and adopted the magistrate's decision. William and Clarence filed a timely notice of appeal from the December 30, 1997 judgment entry, and now assert the following assignments of error:
 "[1.] The probate court erred in determining the Carlins [sic] transfer of the $250,000 to Trust No. II from Trust III was unauthorized, fraudulent or illegal.
 "[2.] The probate court abused its discretion by denying the Carlins any executor fees.
 "[3.] The probate court's decision to deny the Carlins any trustee fees was an abuse of discretion.
 "[4.] The probate court erred in declaring all Mr. Henning's attorneys fees related to Dr. Veroni's estate, thereby denying payment of attorneys fees for work performed on behalf of the Veroni Trusts."
In the first assignment of error, appellants assert that the probate court erred in concluding that the Carlins' transfer of $250,000 to Trust No. II was unauthorized, fraudulent, or illegal. Initially, as noted in our related case in this matter, the bequest to Trust No. II was void to the extent that William and Clarence took under the 1996 will, because they were the only witnesses to that will. See R.C. 2107.15; In re Estate of Veroni
(Dec. 31, 1998), Lake App. No. 97-L-119, unreported.
Furthermore, William and Clarence, as co-executors, had a duty to carry out the terms of the will. Zuendel v. Zuendel (1992),63 Ohio St.3d 733, 737. Also, in performing their duties as co-trustees of Trust No. III, William and Clarence were required to obey the terms of that trust. In re Trust of Brooke (1998),82 Ohio St.3d 553, 557; Daloia v. Franciscan Health Sys. of Cent.Ohio, Inc. (1997), 79 Ohio St.3d 98, 102.
In the case sub judice, the language of Trust No. III and the 1996 will prohibit the transfer of $250,000 in the manner that it was accomplished here. Item III of the 1996 will states:
 "I give, and bequeath the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) to the trustees then serving under the terms of a certain Trust Agreement known as THE FRANK VERONI TRUST NO. II heretofore entered into on June 30, 1989, among me, as donee, and CLARENCE C. CARLIN AND WILLIAM A. CARLIN, as trustees, in augmentation of the property held by such trustees for disposition in accordance with the provisions of said Agreement including any written modification thereof made prior to my death. If necessary to give effect to the provisions hereof, but not otherwise, the provisions of said Trust Agreement are hereby incorporated by reference as fully as though restated herein, and no bond shall be required of such trustees."
Item IV of the 1996 will states, in part, that "[m]y executor shall pay from my probate estate (and/or from funds requested from the trustee of my trust, identified as FRANK VERONI TRUST NO. III) bequests provided for in ITEMS I and II of this Will * * *." Moreover, Article II of Trust No. III states, in relevant part, that "[u]pon my death the trustee is directed to pay to the executor of my estate such amount or amounts from the principal of property then held by the trustee as my executor may request for the purpose of paying * * * bequests made by me under my last Will and Testament * * *." Finally, Article IV of Trust No. III provides that "[t]he trustee shall pay to my Executors such amounts [collectible under insurance policies held under Trust No. III] as may be requested from the principal of the trust for bequests, debts, debts of my estate, administration expenses, all death taxes and other purpose whatsoever."
William testified repeatedly at the September 19, 1997 hearing that the $250,000 transferred to Trust No. II was never transferred into Dr. Veroni's estate. Instead, the money was transferred directly from Trust No. III to Trust No. II, bypassing the estate and the probate court. This supports the magistrate's conclusion that Dr. Veroni's probate estate did not contain sufficient assets to satisfy the $250,000 bequest to Trust No. II. Thus, William and Clarence did not comply with the foregoing provisions of the 1996 will and Trust No. III. Accordingly, the transfer of $250,000 directly from Trust No. III to Trust No. II was improper.
Furthermore, the account of Dr. Veroni's estate filed by William and Clarence shows that $250,000 was transferred to the estate, and was then transferred to Trust No. II. That amount was included as part of the estate for purposes of calculating the double executor fee claimed by Clarence and William. However, William testified repeatedly that that money was never actually transferred to the estate. Thus, the account was fraudulent because it included $250,000 in the estate for purposes of calculating the executor fee, but the record shows that that money was never actually in the estate. The inappropriateness of this action is exacerbated by the fact that William and Clarence were to receive double executor fees pursuant to the 1996 will. In this context, using that money to increase the executor fee is patently improper. Accordingly, the probate court did not err in concluding that the transfer directly from Trust No. III to Trust No. II was improper, unauthorized, and fraudulent. Appellants' first assignment of error is without merit.
Appellants, in the second assignment of error, argue that the probate court abused its discretion by denying them any executor fees. R.C. 2113.35, in relevant part, states:
 "If the probate court finds, after hearing, that an executor or administrator, in any respect, has not faithfully discharged his duties as executor or administrator, the court may deny the executor or administrator any compensation whatsoever or may allow the executor or administrator the reduced compensation that the court thinks proper." (Emphasis added.)
The probate court's decision with respect to reducing or denying executor fees will not be disturbed on appeal in the absence of an abuse of discretion. Whitaker v. Estate of Whitaker (1995),105 Ohio App.3d 46, 58.
Under the facts of this case, we cannot conclude that the probate court abused its discretion in its ruling. First, the $250,000 bequest for the benefit of Clarence and, prospectively, William, was void pursuant to clear statutory authority. See R.C.2107.15. Second, the manner that the $250,000 was transferred violated the express terms of the 1996 will. Third, although the $250,000 that was to be transferred to Trust No. II was never part of the estate, the co-executors used that amount to calculate their fee in a fraudulent fashion. Therefore, as previously discussed, William and Clarence did not properly fulfill their duties as co-executors. Thus, pursuant to R.C. 2113.35, the probate court did not abuse its discretion in denying William and Clarence any executor fees. Appellants' second assignment of error is without merit.
In the third assignment of error, appellants contend that the probate court abused its discretion by denying appellants any trustee fees. Sup.R. 74(E) states:
 "The court may deny or reduce compensation if there is a delinquency in the filing of an inventory or account, or after hearing, the court finds the trustee has not faithfully discharged other duties of the office." (Emphasis added.)
Again, just as was the case with regarding executor fees, a probate court's decision denying trustee fees will not be disturbed on appeal in the absence of an abuse of discretion. Inre Estate of Winograd (1989), 65 Ohio App.3d 76, 82.
Also, as previously stated, and determined at the September 17, 1997 hearing, William and Clarence did not follow the terms of Trust No. III and the 1996 will. Therefore, in light of this misconduct, the probate court properly determined that William and Clarence did not faithfully discharge their duties as co-trustees. Accordingly, the probate court did not abuse its discretion in denying any trustee fees. Appellants' third assignment of error is without merit.
In the fourth assignment of error, appellants argue that the probate court erred in denying payment to Attorney Richard Henning for services performed in conjunction with the Veroni estate and trusts. In 1996, shortly after Dr. Veroni's death, William and Clarence hired Attorney Henning to respond to a motion to remove them as co-trustees and co-executors filed by Dinah Veroni.
R.C. 2113.36 states, in relevant part, that "[w]hen an attorney has been employed in the administration of an estate, reasonable attorney fees paid by the executor or administrator shall be allowed as part of the expenses of administration." Sup.R. 71(B) provides that attorney fees for the administration of estates should not be paid until the final account is prepared for filing, unless otherwise approved by the court. This court has held that a probate court has broad discretion in awarding attorney fees in the administration of an estate. In re Estate of Clark (Dec. 19, 1997), Geauga App. No. 97-G-2060, unreported, at 6. Furthermore, "[t]he determination by a probate court of attorney fees surrounding the administration of an estate will not be reversed absent a showing the award is against the manifest weight of the evidence or contrary to law." In re Estate of Zeichmann (1989),63 Ohio App.3d 717, 719.
In the present case, these attorney fees were never approved by the court; thus, the probate court did not err in denying those fees. However, there is some indication in the record that Attorney Henning performed duties that might have benefited the estate, and are largely unrelated to the estate administration problems at issue in this case. Therefore, upon proper application with the probate court, Attorney Henning might well be entitled to compensation for his services that have benefited the estate. Of course, this decision would be within the sound discretion of the probate court. Since the record before us indicates that the distribution of attorney fees to Attorney Henning was not previously approved by the probate court, the trial court did not err in ordering those fees to be returned to Trust No. III. Appellants' fourth assignment of error is without merit.
For the foregoing reasons, appellants' assignments of error are without merit. The judgment of the Lake County Court of Common Pleas, Probate Division, is affirmed. ________________________________ PRESIDING JUDGE DONALD R. FORD
NADER, J.,
O'NEILL, J., concur.
[1] William and Clarence are the only appellants in this appeal. They are parties both in their individual capacities and as co-trustees and co-executors.
[2] William and Clarence have appealed from the May 7, 1997 judgment entry, Eleventh District Court of Appeals Case No. 97-L-119.
[3] The disclaimer states that this was done at a hearing before the probate court on May 6, 1997, but the record indicates that that hearing actually occurred on May 7, 1997.
[4] Appellee also asserted that the sale of two shares of Perrydale, Inc. might have been improper. However, that objection was resolved at the hearing, and is not at issue on appeal.