OPINION *Page 2 
{¶ 1} On July 19, 1926, Mila Jane Milligan executed her will. Part of her will established the "Jane Milligan Nursing Fund" to provide nursing services to individuals "whose names are not found on the charity lists of the City of Canton" and who otherwise could not secure proper nursing care. In the event the trust would fail, Ms. Milligan bequeathed one-third to Aultman Hospital, one-third to Mercy Hospital, and one-third to appellant, the art museum trust fund, kna Canton Museum of Art.
 {¶ 2} In 1969, the trustees of the Jane Milligan Nursing Fund filed a declaratory judgment action seeking the approval of a proposed plan to modify the trust. This court studied Ms. Milligan's intent and affirmed the trial court's decision permitting the hospitals to act as agents to identify those individuals not on any charity lists in the City of Canton but who nonetheless needed nursing care. See, ThePeoples-Merchants Trust Co. v. Paul W. Brown (April 14, 1971), Stark App. No. 3595.
 {¶ 3} In 1994, the trustees filed another complaint, seeking to amend the operating guidelines to provide for disbursement of excess income from the trust to the Central Stark County United Way. By stipulations and judgment order filed June 2, 1994, the amendment was adopted. The document was signed by the three remaindermen, including appellant herein.
 {¶ 4} On April 21, 2006, appellees, the current trustees, Fred Haupt, Esq., Thomas Hoover, M.D., and Key Bank, filed a complaint seeking to reform the trust. Appellees sought to provide respite care for caregivers, and provide services to those individuals who reside in the geographical boundaries of Stark County, Ohio. On June 21, 2006, appellant filed a counterclaim, seeking to dissolve the trust as the trust had *Page 3 
failed. A hearing was held on September 7, 2006. By judgment entry filed December 18, 2006, the trial court found in favor of appellees, permitting the modifications. A nunc pro tunc judgment entry was filed on January 5, 2007 to correct an omission in the language of the December entry.
 {¶ 5} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 6} "DID THE PROBATE COURT ERR IN APPLYING THE DOCTRINE OF CY PRES TO CHANGE THE TERMS OF THE TRUST AND TO CHANGE THE CLASS OF BENEFICIARIES FROM PERSONS RESIDING IN CANTON, OHIO TO PERSONS RESIDING IN STARK COUNTY, WHEN THE TESTATRIX's WILL SHOWED A SPECIFIC INTENTION FOR THE USE OF THE TRUST FUNDS AND A SPECIFIC INTENTION TO BENEFIT CHARITIES ONLY WITHIN CANTON, OHIO?"
 II {¶ 7} "DID THE PROBATE COURT ERR IN APPLYING THE DOCTRINE OF CY PRES TO A TESTAMENTARY TRUST WHEN THE TESTARIX HAD PROVIDED FOR AN ALTERNATIVE DISPOSITION OF THE TRUST IF THE CHARITABLE PURPOSE BECAME IMPRACTICABLE?"
 III {¶ 8} "DID THE PROBATE COURT ERR IN APPLYING THE DOCTRINE OF DEVIATION TO MODIFY A CHARITABLE TRUST IN A WAY THAT CHANGED THE TERMS OF THE TRUST AND CHANGED THE CLASS OF BENEFICIARIES SPECIFIED IN THE TRUST INSTRUMENT?" *Page 4 
 IV {¶ 9} "DID THE PROBATE COURT ERR IN DENYING THE CLAIM OF THE CANTON MUSEUM OF ART TO TERMINATE THE TRUST WHEN THE EVIDENCE SHOWED THAT THE TRUST HAD BECOME IMPRACTICABLE?"
 I, II, III, IV {¶ 10} Appellant argues the trial court erred when it permitted a deviation in the class of beneficiaries, and erred in failing to find the trust had become impracticable and should be dissolved in favor of the remaindermen.
 {¶ 11} We have chosen to address these assignments collectively because of the interrelationship of the facts and laws pertinent to each assignment of error. This case involves Item Ten in Mila J. Milligan's Last Will and Testament which states the following:
 {¶ 12} "In the event my sister, Ora F. Harris, shall not survive me, or, if she does survive me, upon her death, said trustees shall, as soon as practicable after the death of my said sister, or, after my own death if my sister shall not survive me, establish with said trust fund the `Jane Milligan Nursing Fund'.
 {¶ 13} "It is my will and I direct that this fund be used by said trustees in providing nurses and nursing service to that great class of people whose names are not found on the charity lists of the city of Canton and who are financially unable to secure proper nursing care, service and attention in times of illness and it is my purpose in establishing this fund that assistance be rendered in these worthy cases as may be determined by the said trustees in their absolute discretion without notoriety or publicity. It is my recommendation that nursing service shall not be provided for any one *Page 5 
individual for a period greater than two (2) weeks except where conditions in the absolute and unqualified discretion of the trustees herein make a longer period necessary.
 {¶ 14} "* * *
 {¶ 15} "It is my will and I further direct that any time after a trial of two (2) years, if, in the unqualified discretion of said trustee or trustees, the `Jane Milligan Nursing Fund' is not a success or has been found not to be practicable and said trust fund has not been properly and satisfactorily used by the people of the city of Canton to the satisfaction of the said trustee or trustees, said trust fund may be by them abandoned and dissolved and all of said property I give, devise and bequeath, in the event of such dissolution, as follows:
 {¶ 16} "One-third (1/3) to the trustees of Aultman Hospital of the city of Canton, Ohio, for same specific need at said Aultman Hospital other than the general operating fund.
 {¶ 17} "One-third (1/3) to the trustees of Mercy Hospital of Canton, Ohio, for same one specific need at said Mercy Hospital other than the general operating fund.
 {¶ 18} "And one-third (1/3) into the art museum trust fund established by my beloved husband, Henry C. Milligan, and hereinafter referred to in this my will."
 {¶ 19} This case was initiated on April 21, 2006 by appellees, the current trustees, for modifications to the "Mila Milligan Nursing Fund Operating Guidelines" as follows:
 {¶ 20} "A. Persons receiving qualified services must reside within the geographical boundaries of Stark County, Ohio. *Page 6 
 {¶ 21} "B. Nursing care may be provided for the purpose of providing respite nursing services to patients who rely primarily on a family member care-giver for their nursing needs, for a period not to exceed the lesser of fourteen (14) separate calls on the patient, or two (2) weeks of continuous nursing care. This time limitation, however, may be increased or decreased at the sole discretion of the Trustees.
 {¶ 22} "C. For all other circumstances, other than respite care set forth in the preceding paragraph, the Fund will pay for up to the lesser of thirty (30) separate calls on a patient, or four (4) continuous weeks of nursing care. Such time limitation, however, may be increased or decreased at the sole discretion of the Trustees."
 {¶ 23} In its June 21, 2006 counterclaim, appellant stated such a deviation should be denied, and the trial court should find the trust is not successful or not practicable or not used by the people of the city of Canton. Appellant requested a dissolution of the trust in favor of the remaindermen.
 {¶ 24} The trial court's decision rested on the following facts and conclusions:
 {¶ 25} 1. "The purpose of the Trust is to help the `worthy cases' who are `financially unable to secure proper nursing care, service and attention in times of illness.'" See, December 18, 2006 Judgment Entry at 9.
 {¶ 26} 2. The proposed modification does not change the testator's purpose, but will enable the trustees to carry out their function "with the broadest possible latitude in making judgments." Id.
 {¶ 27} 3. The fact that "it has become more difficult to find qualified beneficiaries does not make the Trust unsuccessful." Id. at 12. In fact, the "trustees do not believe that the Trust is unsuccessful or impracticable." Id. at 14. *Page 7 
 {¶ 28} 4. Appellant's stipulation and agreement to modifications in 1994 operate as res judicata on the present modifications. Id. at 13-14.
 {¶ 29} Based upon these findings, the trial court modified the trust via a Judgment Entry Nunc Pro Tunc filed January 5, 2007 as follows:
 {¶ 30} "A. That the class of persons eligible to receive qualified services be expanded to include all persons residing in Stark County, Ohio `whose names are not found on the charity lists . . . and who are not, in the accepted sense of the term, objects of charity, but who are financially unable to secure proper nursing care, service, and attention in times of illness.'
 {¶ 31} "B. That nursing care may be provided for the purpose of providing respite nursing services to patients who rely primarily on a family member care-giver, for a period not to exceed the lesser of fourteen separate calls on the patient, or two weeks of continuous nursing care; provided, however, that this time limitation may be modified in the sound discretion of the Trustees in each individual case.
 {¶ 32} "C. That nursing care may be provided for purposes other than respite care for a period not to exceed the lesser of thirty separate calls on the patient, or four weeks of continuous care; provided, however, that this time limitation may be modified in the sound discretion of the Trustees in each individual case.
 {¶ 33} "D. In addition to the above authority, the Trustees, in their sole discretion, may also make distributions to eligible Stark County non-profit charitable organizations that provide nursing care, including, but not limited to, Aultman Hospital Association, Mercy Medical Center, and the Central Stark County United Way. Any payments completed under this authority shall be made with the stipulation that the funds are to be *Page 8 
used for the care of individuals who would otherwise be eligible to benefit from the Trust, under A through C above."
 {¶ 34} In an opinion from this court, The Peoples-Merchants Trust Co.v. Paul W. Brown (April 14, 1971), Stark App. No. 3595, at 10-12, this court described in great detail the purpose of the trust as follows:
 {¶ 35} "Counsel for the trustees has filed a scholarly brief setting forth the statutory history of public assistance to the needy in the State of Ohio. There is no need to repeat those details here. We do consider it important to express the sentiment which we believe was captured by Mrs. Milligan in her will: that this nation needs those persons whose disposition to be self-reliant causes them to refuse to give up and go on welfare but who would be simply destroyed financially by unexpected illness at current costs. It requires no extraordinary perception to identify under 1971 conditions the same type of courageous independent citizen who Mila J. Milligan had in mind in 1926. Furthermore, it was her money which she accumulated and she decided that she wanted to apply it to this purpose after her death. She undertook this plan with her apparently sophisticated eyes wide open, apparently confident that future courts would not be hostile to her desire to encourage self-reliance. This is abundantly made clear by the underscored portions of her will. They were obviously selected by skilled lawyers. The widest possible discretion is given to people quite possibly to be appointed at some future time long after her death and perhaps, as in this case, about whom she knew nothing. She made them subject only to supervision by some future judge unknown to her. What we have before us today is, in no sense, an unexpected turn of events. In fact, she expressly provided for it using the strongest possible legal *Page 9 
language calculated to vest the unknown successors in trust of her named trustees with the broadest possible latitude in making judgments.
 {¶ 36} "We have taken the pains to increase an already bulky record by specifically setting forth the above because it concerns what was obviously the primary sentiment of the person whose money the parties now seek to control.
 {¶ 37} "We have carefully examined the file, the testimony stipulated and the excellent briefs submitted by both sides in this case, as well as the carefully drafted memorandum of decision filed by Judge Wise in the trial court.
 {¶ 38} "For the balance of this our memorandum we adopt the memorandum of decision filed by the trial court in this cause, including all the findings of fact, conclusions of law, judgments and declarations therein contained, and this we do by express incorporation by reference of all of it as fully as if it were rewritten hereinafter in full upon these pages above our signatures.
 {¶ 39} "In summary, we find that it was the intent of the Testatrix, Mila J. Milligan, to create the trust for which she provided in her will; that it was the further intent of the Testatrix to give wide discretion to the plaintiff trustees to evolve the procedures necessary to administer such trust; that it was her further intent to give wide discretion to said trustees to evaluate the practicability of, and necessity for, such trust during its administration; and that Mila J. Milligan, Testatrix, intended that such trust be in existence and operating for a 2-year period, after which its merit should be judged by the plaintiff trustees."
 {¶ 40} In 1994, by stipulation and agreement, appellant and appellees herein agreed to a modification of the trust as follows in pertinent part: *Page 10 
 {¶ 41} "E. The Fund will pay for up to fourteen (14) separate calls on a patient, or two (2) weeks continuing nursing care. This time limitation, however, may be increased or decreased at the sole discretion of the Trustees.
 {¶ 42} "F. The person receiving nursing care should not be receiving any other type of income maintenance (such as welfare receipts).
 {¶ 43} "G. Other payment reimbursement resources (i.e., insurance) shall be billed first, prior to requesting aid from the Jane Milligan Nursing Fund.
 {¶ 44} "H. If, in any calendar year, the income generated by the Fund is greater than the disbursements made by the Fund for nursing care, the Trustees may, in their sole discretion, disburse such excess income to The Central Stark County United Way, with the direction that preference be given to designating The Visiting Nurse Society of Stark County as the recipient of such income, but not restricting the ability of The Central Stark County United Way to such income for other purposes." See, Stipulations and Judgment Order filed June 2, 1994 in Probate Case No. 154939.
 {¶ 45} In Grava v. Parkman Twp., 73 Ohio St.3d 379, 1995-Ohio-331, syllabus, the Supreme Court of Ohio explained res judicata as "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."
 {¶ 46} By so stipulating in the 1994 judgment order, appellant already agreed to disbursement of trust funds to persons outside the city of Canton. The general right to disburse excess funds to Central Stark County United Way expanded the class of beneficiaries to persons living outside the city of Canton. *Page 11 
 {¶ 47} As to the expansion of the class, appellant is barred from re-litigating the issue. The modification as to the class of persons in the January 5, 2007 judgment entry nunc pro tunc is not a geographical expansion of persons, but is limited to the same geographical boundaries.
 {¶ 48} Despite the 1994 agreement, appellant argues disbursement to Central Stark County United Way is evidence of the trust's inability to provide for the class of beneficiaries described in the trust. In stark contrast to this argument is the following language from this court's 1971 opinion at 9:
 {¶ 49} "It is our finding that the class of people referred to in the will exists in 1971 as surely as it did when the will was written in 1926. While it is true that in the strict sense of the word there are no `charity lists' in the 1926 sense, public welfare although no longer City administered is a current phenomenon of major concern both as to the present size and rate of increase. At the same time many proud citizens would rather work than go on welfare, a fact for which we may all be thankful, but they are nevertheless in these inflationary times of 1971 `financially unable to secure proper nursing care, service and attention in times of illness'."
 {¶ 50} Upon review, we find appellant's arguments regarding the failure of the trust to be flawed and not tenable given this court's 1971 opinion, the 1994 stipulations and judgment order, and the doctrine of res judicata.
 {¶ 51} Appellant also argues the specific nature of the bequest and the provision for remaindermen negate the operation of the doctrine of cy pres.
 {¶ 52} In Daloia, Trustee v. Franciscan Health System of Central Ohio,Inc., 79 Ohio St.3d 98, 1997-Ohio-402, syllabus, the Supreme Court of Ohio held the following: *Page 12 
 {¶ 53} "1. The doctrine of cy près is a saving device applicable to charitable trusts and it permits a court to direct the application of the trust property to a charitable purpose different from that designated in the trust instrument.
 {¶ 54} "2. The doctrine of deviation is distinguishable from the doctrine of cy près in that the doctrine of deviation is applicable to both private and charitable trusts and it is concerned solely with the administration of the trust.
 {¶ 55} "3. In applying the doctrine of deviation, a court cannot change the original charitable objective of the settlor or divert the bequest to an entity with a charitable purpose different from the purpose set forth in the trust instrument."
 {¶ 56} We find from a plain reading of the testatrix's language that in fact a general charitable intent can be found as is pointed out in this court's 1971 opinion.
 {¶ 57} Lastly, appellant argues the trial court was incorrect in permitting a deviation as to the type of care and the length of care. Pursuant to Daloia, a deviation may not change the purpose of the charitable trust.
 {¶ 58} The establishment of the trust provides for a recommendation of the term for the provided nursing services, but does not limit it exclusively to two weeks. The trust bequest contains language that the trustees have unqualified discretion to determine if the purposes of the trust are a success and practicable.
 {¶ 59} We find this provision, and the language of recommendation, acknowledges that a deviation may be made in order for the trust proceeds to be used to fulfill the purpose of the trust. The new provisions for respite nursing services with a limit to the number of times (thirty separate calls) falls within the purposes acknowledged in this court's 1971 opinion and the general purpose of the trust. *Page 13 
 {¶ 60} Upon review, we find such deviations do not violate the terms of the trust, the discretionary powers of the trustees or the doctrine of deviation.
 {¶ 61} Assignments of Error I, II, III and IV are denied.
 {¶ 62} The judgment of the Court of Common Pleas of Stark County, Ohio, Probate Division is hereby affirmed.
 Farmer, P.J. Wise, J. and Edwards, J. concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, Probate Division is affirmed. *Page 1