[Cite as *Marinakis v. Marinakis*, 2025-Ohio-2554.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| EVONNE SKOUTELAS MARINAKIS, et al., | : | |
| | : | CASE NO. CA2024-03-046 |
| Appellees, | : | |
| | : | OPINION AND JUDGMENT ENTRY 7/21/2025 |
| - vs - | : | |
| | : | |
| GEORGE D. MARINAKIS, et al., | : | |
| | : | |
| Appellants. | | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. PC22-0018

Vory, Sater, Seymour and Pease LLP, and Elizabeth E.W. Weinewuth, for appellees, James Marinakis, Nicole Marinakis and Constantine Marinakis.

Schroeder, Maundrell, Barbiere & Powers, and Thomas T. Keating and Kurt M. Irey, for appellants, George D. Marinakis, Ted D. Marinakis and Angela D. Marinakis.

# O P I N I O N

**HENDRICKSON, J.**

{¶ 1} Appellants, George D. Marinakis, Ted D. Marinakis, and Angela D. Marinakis (collectively, "the Siblings"), appeal from the decision of the Butler County Court of Common Pleas, Probate Division, ordering the payment of guardian ad litem fees from

the Estate of Bill D. Marinakis. For the reasons outlined below, we reverse the trial court's decision.[1]

## I. Background

{¶ 2} This appeal arises from a probate dispute concerning the estate of Bill D. Marinakis, who died on September 9, 2021.

{¶ 3} In May 2009, Bill executed a will leaving his entire estate to his three siblings—George, Ted, and Angela—save for nominal bequests to his church and dental school. One month later, he married Evonne Skoutelas Marinakis. The couple subsequently had three children, born in 2010, 2013, and 2020. Despite these significant life changes, Bill never amended his will before his death.

{¶ 4} After the will was admitted to probate on October 29, 2021, Evonne, acting individually and on behalf of the children, filed a declaratory judgment action on May 23, 2022, against the Siblings. She sought recognition of the children as pretermitted heirs under R.C. 2107.34—a designation that would entitle them to inherit as if their father had died intestate. Both parties moved for summary judgment.

{¶ 5} On August 16, 2023, during the pendency of these cross-motions, the probate court identified a potential conflict between the interests of the children and their mother. Five days later, the court sua sponte appointed attorney Elizabeth E.W. Weinewuth as guardian ad litem for the children. The appointment order specified that Attorney Weinewuth would be "compensated at her usual hourly rate" and that her compensation would be either "taxed as costs" or "paid as expenses of administration from the Estate." The Siblings raised no objection to these terms.

{¶ 6} Two months later, on October 25, 2023, Attorney Weinewuth submitted her

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar for purposes of issuing this opinion.

first motion for payment, seeking $10,861.40 in fees and costs. Her invoice detailed services rendered in September 2023 and applied an hourly rate of $610. The Siblings, for the first time, objected on November 13, 2023. They challenged the court's authority to order payment by the estate, questioned the failure to distinguish between legal and nonlegal services, and requested both an evidentiary hearing and oral argument on the motion.

{¶ 7} Without holding the requested hearing, the probate court summarily ordered full payment within 30 days through an order entered on February 27, 2024. The Siblings filed a notice of appeal on March 26, 2024. Shortly thereafter, on April 30, 2024, the probate court granted summary judgment to Evonne and the children, concluding that the children qualified as pretermitted heirs entitled to intestate shares of their father's estate.

{¶ 8} The procedural waters were further muddied when, on May 9, 2024, Attorney Weinewuth moved to withdraw her fee motions (she had filed a second one on March 18, 2024) and to vacate the payment order, indicating her intent to file a revised motion in light of the summary judgment. The probate court granted this motion the same day and vacated the payment order. The Siblings have separately appealed the entry of summary judgment,[2] but our focus in this appeal concerns only the February 27, 2024 payment order.

## II. Analysis

{¶ 9} The Siblings' single assignment of error alleges:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS BY GRANTING PAYMENT OF THE GAL'S FEE REQUEST FROM THE ESTATE OF BILL D. MARINAKIS WHICH IS CONTRARY TO OHIO LAW AND NOT SUPPORTED BY THE RECORD.

---

2. *Marinakis v. Marinakis*, 12th Dist. Butler No. CA2024-05-070.

- 3 -

{¶ 10} The Siblings argue that the trial court abused its discretion in three ways: by not complying with Butler County Probate Court Local Rule 58.2(B), by not determining which services were provided as GAL and which were provided as legal counsel for the children, and by allowing attorney fees to a party who has not prevailed in the underlying action and for claims that do not benefit the estate.

{¶ 11} Shortly after the probate court entered summary judgment, the GAL filed a motion to dismiss this appeal, contending that the payment order was not a final, appealable order and, in any event, was now moot. We overruled the motion. Because of the procedural complexities in this case, before reaching the merits, we explain more fully the basis for our jurisdiction over the February 27, 2024 payment order.

## A. Matters of Jurisdiction

{¶ 12} Our jurisdiction extends only to final orders, that is, those that "dispose of the whole case or some separate and distinct branch of it, and leave nothing for future determination." *Dudley v. Dudley*, 2012-Ohio-225, ¶ 12 (12th Dist.), *overruled on other grounds by Hetterick v. Hetterick*, 2013-Ohio-15 (12th Dist.). We lack authority to review merely "interlocutory orders," defined as those relating to "'some intermediate matter in the case.'" *Grover v. Dourson*, 2018-Ohio-1456, ¶ 16 (12th Dist.) (quoting *Black's Law Dictionary*).

{¶ 13} The statutory framework for final orders, found in R.C. 2505.02, includes orders in "special proceedings" that affect a "substantial right." R.C. 2505.02(B)(2). Estate administration matters generally constitute special proceedings. *In re Estate of Parks*, 2024-Ohio-1841, ¶ 22 (12th Dist.). The analysis here turns on whether the payment order affected a "substantial right," which is defined as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect," R.C. 2505.02(A)(1).

- 4 -

{¶ 14} When the Siblings filed their notice of appeal on March 26, 2024, the payment order lacked the requisite finality for immediate review. Two considerations compel this conclusion. First, the GAL's right to fees exists solely by virtue of the probate court's appointment order, not through statute or common law. This court-created payment obligation does not implicate a "substantial right" within the meaning of R.C. 2505.02.

{¶ 15} Second, and more fundamentally, the payment order did not definitively affect any right. With the underlying declaratory-judgment action still pending, multiple avenues remained available for challenging the fee payment. Should the payment order ultimately prove improper, the remedy of restitution from the GAL would remain available. *See Horvath v. Packo*, 2013-Ohio-56, ¶ 22 (6th Dist.) (involuntary sale of receivership assets did not extinguish plaintiff's right to appeal the denial of Civ.R. 60[B] motion, because if appellate court ultimately determined trial court abused its discretion in denying that motion, plaintiff would be entitled to restitution for resulting losses). Unlike situations where immediate appeal proves necessary to preserve rights—such as ongoing custody disputes where fee issues may persist for years, *see Jackson v. Herron*, 2005-Ohio-4039, ¶ 8 (11th Dist.)—delayed review here would not foreclose appropriate relief. Simply put, the payment order here is not "one which, if not immediately appealable, would foreclose appropriate relief in the future." *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63 (1993).

{¶ 16} Our conclusion aligns with precedent from both this district and others. In *Grover v. Dourson*, we held that interim attorney fee awards in divorce proceedings lack finality because they remain subject to reconsideration and can be adequately reviewed upon final judgment. 2018-Ohio-1456, at ¶ 21. Similarly, the First District has held that probate court orders directing payment of attorney fees from estate proceeds are not final while the underlying action remains pending. *In re Estate of Alsfelder*, 2014-Ohio-3568

(1st Dist.).

{¶ 17} While the appeal in this case originated from an unappealable interlocutory order regarding payment obligations, the probate court's subsequent entry of summary judgment on April 30, 2024, accompanied by an express determination under Civ.R. 54(B) that there was no just reason for delay, fundamentally altered the jurisdictional landscape. Under App.R. 4(C), when a party files a notice of appeal before the entry of a final judgment, that otherwise premature notice springs to life upon the entry of the final judgment. The rule specifically provides that the premature notice is treated as filed immediately after the "entry of the judgment or order that begins the running of the appeal time period." This saving provision serves the interests of judicial economy by preserving appeals that would otherwise be dismissed on technical grounds. Here, the probate court's summary-judgment entry definitively resolved the core disputes between the parties. When coupled with the court's Civ.R. 54(B) certification, this judgment triggered the appeal period. By operation of App.R. 4(C), the previously filed notice of appeal—though premature when filed—became effective immediately upon entry of the summary judgment. Our jurisdiction to review the payment order flows directly from that original notice of appeal, as perfected by the later-filed summary-judgment entry.

{¶ 18} The probate court's subsequent attempt to vacate the appealed order neither defeats nor complicates our review. We denied the GAL's motion to dismiss this appeal, on the ground that the probate court's May 9, 2024 order vacating the payment order exceeded its authority. Once a notice of appeal is perfected, the trial court's continuing jurisdiction is strictly limited; it cannot take actions that would interfere with our appellate review. *See Daloia v. Franciscan Health Sys. of Cent. Ohio*, 79 Ohio St.3d 98, 101, fn. 5, 1997-Ohio-402. "In other words, 'the trial court retains all jurisdiction not inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the

judgment.'" *Id*., quoting *Howard v. Catholic Social Serv. of Cuyahoga Cty., Inc*., 70 Ohio St.3d 141, 146, 1994-Ohio-219. An order vacating the very judgment under appeal would directly conflict with our power to reverse, affirm, or modify that judgment. Consequently, the probate court's May 9 vacation order is void for want of the court's jurisdiction.

{¶ 19} Having established a basis for our jurisdiction, we proceed to the merits.

## B. The Unchallenged Appointment of the GAL

{¶ 20} The probate court had the authority to appoint the guardian ad litem through a local rule, which directs that the court "shall appoint a suitable and disinterested person as Guardian Ad Litem" if it "determines that a Guardian Ad Litem is necessary or appropriate." B.C.L.R. 75.12(C). Before addressing the substantive merits of the Siblings' various challenges to the GAL payment order, we examine the matters that the Siblings failed to raise timely in the probate court concerning the guardian ad litem's appointment, which constrain our review.

{¶ 21} The chronology proves telling. On August 16, 2023, the probate court announced its intention to appoint a guardian ad litem, citing potential conflicts between the children's interests and those of their mother. Five days later, the court appointed Attorney Elizabeth E.W. Weinewuth as GAL, explicitly ordering that she would be "compensated at her usual hourly rate" and that such compensation would be either "taxed as costs" or "paid as expenses of administration from the Estate." These terms established the basic framework for the GAL's service and compensation. The Siblings remained silent. For nearly three months, they participated in proceedings knowing that Attorney Weinewuth served as the children's GAL—engaging in settlement discussions, receiving motion papers, and participating in status conferences. Only after Weinewuth submitted her first motion for payment on October 25, 2023, did the Siblings finally voice their objections to these fundamental aspects of her appointment and compensation.

{¶ 22} Belated challenges cannot succeed. As we observed in a previous case, a party cannot remain "aware of the GAL's ongoing work" only to object "after the GAL sent her supplemental bill." *Payson v. Hennessey*, 2018-Ohio-2437, ¶ 57 (12th Dist.). Such tactical acquiescence followed by post-hoc objection undermines both judicial efficiency and fundamental fairness. Indeed, this approach "is akin to invited error," wherein "'[a] party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make.'" *Id.*, quoting *Lester v. Leuck*, 142 Ohio St. 91 (1943), paragraph one of the syllabus.

{¶ 23} The consequences of this procedural default are significant. Having failed to raise timely objections to these foundational aspects of the GAL appointment, the Siblings have forfeited all but plain error review. *See In re A.M.*, 2023-Ohio-1523, ¶ 16 (12th Dist.) (appellant never raised whether guardian ad litem served a dual role without authorization or whether GAL's recommendations conflicted with children's wishes). The plain-error standard presents a formidable hurdle in civil cases, requiring error that "'seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *In re L.W.*, 2017-Ohio-8433, ¶ 18 (12th Dist.), quoting *Goldfuss v. Davidson*, 1997-Ohio-401, syllabus. Plain error review in civil cases is reserved for "extremely rare cases with exceptional circumstances." *Id*.

{¶ 24} The Siblings have not demonstrated—indeed, have not even attempted to demonstrate—that this case presents such extraordinary circumstances. The probate court's appointment of a GAL, its selection of Attorney Weinewuth, and its established framework for her compensation all fell well within its authority. None of these decisions approaches the kind of fundamental procedural defect that might warrant plain-error review. Accordingly, we will not disturb these aspects of the probate court's order. The

Siblings' objections to the GAL appointment itself, the selection of Attorney Weinewuth, the use of her usual hourly rate, and the basic framework for payment through costs or estate administration are untimely and do not rise to the level of plain error. Our subsequent analysis therefore focuses solely on those aspects of the fee award that could not have been challenged earlier, namely, the reasonableness of the specific fees requested and the procedural requirements for their payment.

### C. The Alleged Failure to Comply with B.C.L.R. 58.2(B)

{¶ 25} The Siblings first contend that the probate court erred by ordering payment of GAL fees without first satisfying the requirements of local rule B.C.L.R. 58.2(B). While we think that the court's deviation from its local rule warranted explanation, we find no reversible error.

B.C.L.R. 58.2(B) provides:

> Prior to the appointment of a Guardian Ad Litem, or anytime thereafter, a party shall deposit an amount determined by the Court appropriate to satisfy the services of a Guardian Ad Litem. Prior to the release of any deposit for services rendered, a Guardian Ad Litem shall submit an Application and Proposed Entry for the approval of fees.

The rule establishes two procedural requirements: first, that parties deposit court-determined funds to cover GAL services, and second, that GALs submit an application and proposed entry for fee approval before the release of such deposits. The Siblings argue that strict adherence to these requirements should have preceded any fee disbursement in this case. This argument, however, overlooks the discretionary nature of local rule enforcement and fails to demonstrate any resulting prejudice.

{¶ 26} Local rules, while important for orderly judicial administration, occupy a distinct position in the procedural framework. As we have recognized, these rules are "'procedural in nature, and not substantive principles of law.'" *Paramount Parks, Inc. v.*

*Admiral Ins. Co.*, 2008-Ohio-1351, ¶ 37 (12th Dist.), quoting *Yanik v. Yanik*, 2003-Ohio-4155, ¶ 9 (9th Dist.). Courts consequently retain "great latitude in following and enforcing their own local rules." *Holbrook v. Holbrook*, 2018-Ohio-2360, ¶ 17 (12th Dist.). This latitude enables courts to adapt procedural requirements to the particular circumstances of each case. This flexibility proves especially appropriate for local rules that are "merely administrative" and "designed to facilitate case management." *Wallner v. Thorne*, 2010-Ohio-2146, ¶ 21 (9th Dist.), citing *Smith v. Conley*, 2006-Ohio-2035, ¶ 6-10. In such instances, strict compliance may yield to practical necessity, provided "the peculiar circumstances of the case warrant deviation." *Id*. B.C.L.R. 58.2(B) falls squarely within this category, as it establishes an administrative framework for GAL compensation rather than substantive rights or obligations. Furthermore, the Local Rules of the Butler County Probate Court explicitly place the application of the local rules in the discretion of the court. B.C.L.R. 5.4 (stating that "[t]he Court may modify or waive the application of any of these Rules if the Court determines, in its sole discretion, that the particular circumstances warrant it").

{¶ 27} Nevertheless, we must note that the probate court's order contains no explanation for its departure from the local rule's requirements. While such deviation may well have been justified, the absence of any stated rationale complicates our review. Sound judicial practice favors transparency, particularly when courts exercise their discretion to deviate from established procedures. A brief explanation serves multiple purposes: it demonstrates thoughtful consideration, provides guidance for future cases, and facilitates meaningful appellate review.

{¶ 28} However, this omission does not warrant reversal in this case. The Siblings have failed to demonstrate any prejudice resulting from the court's procedural deviation. B.C.L.R. 58.2(B) primarily serves to ensure orderly compensation of guardians ad litem.

It does not create substantive rights in other parties. The timing of fee payment, whether through the rule's deposit-and-application procedure or through direct court order, does not materially affect the Siblings' interests. The substantive question remains the same: whether the fees are reasonable and necessary for services rendered in protection of the children's interests.

{¶ 29} Accordingly, while probate courts ought to explain departures from local rules, the absence of such explanation here, without more, does not constitute reversible error.

**D. Distinguishing Between the GAL's Services, and the Need for a Hearing**

{¶ 30} The Siblings next advance two principal contentions: first, that the Estate should bear responsibility only for fees associated with traditional guardian ad litem services, with the children liable for any legal services that the guardian ad litem rendered; and second, that the probate court should have conducted an evidentiary hearing to assess the necessity and reasonableness of the GAL's requested fees. While we reject the first contention, we find merit in the second.

{¶ 31} The Siblings' attempt to bifurcate guardian ad litem and legal services misunderstands the role of guardians ad litem. A guardian ad litem is a court-appointed "*special* guardian" who protects the interests of a ward—any person for whom a guardian is acting, *see* R.C. 2111.01(B)—in a particular proceeding. (Emphasis sic.) *In re Guardianship of Bowen*, 1993 Ohio App. LEXIS 2403, *11 (4th Dist. Apr. 22, 1993). While the role of guardian ad litem is distinct from that of legal counsel, the law recognizes that these roles may necessarily overlap.

{¶ 32} "'The role of guardian ad litem is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest. The role of the attorney is to zealously represent his client within the bounds of the law.'" *State ex rel.*

*Nasal v. Miami Cty. Bd. of Elections*, 2021-Ohio-2993, ¶ 17, quoting *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232 (1985); *see also* Sup.R. 48.01(B) and (C). The Rules of Superintendence that govern GALs in domestic relations and juvenile cases explicitly contemplate that an attorney-GAL may engage in the practice of law, including filing pleadings, examining witnesses, and advancing legal arguments. Sup.R. 48.03(A)(7); *Nasal* at ¶ 18. R.C. 2151.281(I), applicable in juvenile cases, states that a guardian ad litem "shall perform whatever functions are necessary to protect the best interest of the child." This broad mandate may encompass legal advocacy when circumstances warrant. Indeed, "[g]enerally, when an attorney is appointed as guardian ad litem, that attorney may also act as counsel for the child, absent a conflict of interest." R.C. 2151.281(H).

{¶ 33} Our recent decision in *In re A.M.*, provides particularly instructive guidance here. There, as here, a party challenged the propriety of an attorney-GAL providing legal services without an express appointment as counsel. We rejected that challenge, articulating several principles that illuminate our path in this case. We recognized first that in custody disputes a guardian ad litem may maintain dual roles without necessitating the appointment of separate counsel, absent a conflict of interest. *In re A.M.*, 2023-Ohio-1523, at ¶ 14. This principle reflects the practical reality that effective protection of a child's interests often requires both the investigative functions of a guardian ad litem and the advocacy skills of counsel. At the same time, we emphasized an important caveat: "Because the roles of guardian ad litem and counsel are different, courts should not presume a dual appointment when the appointed guardian ad litem is also an attorney, absent a dual express appointment." *Id.*, citing *In re Borders*, 2002-Ohio-2578, ¶ 23 (12th Dist.). This admonition serves to maintain clear lines of responsibility and accountability.

{¶ 34} But the absence of an express dual appointment does not automatically preclude an attorney-GAL from engaging in legal advocacy when circumstances warrant.

As we explained in *In re A.M.,* a guardian ad litem's statutory mandate to "'perform whatever functions are necessary to protect the best interest of the child'" may encompass legal advocacy. *Id.* at ¶ 19, quoting R.C. 2151.281(I). Indeed, we specifically approved the attorney-GAL's advocacy in that case because it "was clearly based upon her determination of what was in the children's best interest." *Id.*

{¶ 35} The parallels to the present case are clear. Like the attorney-GAL in *In re A.M.,* Attorney Weinewuth's services (including settlement negotiations, case status conferences, and motion practice) appear to have been undertaken in service of her mission to protect the children's interests. And as in *In re A.M.,* no party contemporaneously objected to Weinewuth's provision of legal services, suggesting a shared understanding that such services fell within the scope of her appointment. *See In re A.M.* at ¶ 16, 17 (appellant failed to raise or object to court allowing attorney-GAL to also act as children's attorney without express appointment).

{¶ 36} Here, Attorney Weinewuth was appointed as GAL with what she has characterized as "the clear understanding that her role would be to represent the Marinakis Children's legal interests in this matter and act in her capacity as an attorney in so doing." The record supports this understanding: she engaged in settlement negotiations, participated in case status conferences, and prepared legal documents, all without objection from any party. While the appointment order did not expressly designate her as counsel for the children, her dual service may be necessary to fulfill her responsibility of protecting their interests.

{¶ 37} We find persuasive, however, the Siblings' argument regarding the necessity of an evidentiary hearing. While there appears to be no legal mandate for such hearings in probate cases, we think that the pertinent Superintendence Rule applied in domestic relations and juvenile cases makes sense: no hearing is required on a request

for payment of guardian ad litem fees and expenses "[u]nless a hearing is requested by a party or the court . . . after a motion for payment is filed," Sup.R. 48.02(H)(4). We think that it was unreasonable of the probate court not to hold a hearing when the Siblings requested one, especially since the court's summary approval of the GAL's fee request provided no indication that the court engaged in any analysis of the services rendered. The payment order contains no evaluation of the necessity of the services provided, the time expended on various tasks, the skill required for the representation, or the specific objections raised by the Siblings.

{¶ 38} This absence of reasoning is particularly problematic given that "the trial court has a much better vantage point from which to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court." *In re Estate of Born*, 2007-Ohio-5006, ¶ 21 (10th Dist.), citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). Without any explanation of the court's analysis, meaningful appellate review becomes impossible.

{¶ 39} Accordingly, we remand this matter to the probate court with instructions to conduct an evidentiary hearing on the requested fees. The court should also take this opportunity to clarify the scope of Attorney Weinewuth's appointment, specifically addressing whether her role encompasses both traditional GAL duties and legal representation of the children. While such dual service may well be appropriate here, the court's express delineation of these responsibilities will promote clarity and avoid future disputes.

### E. The Probate Court's Authority to Order Payment

{¶ 40} The Siblings' last challenge to the payment of GAL fees rests on three grounds: Ohio's "American Rule" regarding attorney fees, the "common fund" doctrine exception, and the Declaratory Judgment Act, R.C. 2721.16. Their argument

fundamentally misapprehends both the nature of GAL fees and the probate court's inherent authority to protect the interests of minor children in probate proceedings.

{¶ 41} First, as we explained earlier, the Siblings failed to preserve their objection to the court's original order establishing that GAL compensation would be treated as either court costs or estate-administration expenses. Having acquiesced to this framework at the outset, they cannot now dispute its basic premises.

{¶ 42} More fundamentally, the Siblings' reliance on rules governing attorney fees is misplaced. GAL fees occupy a distinct category from traditional attorney fees. The GAL here was not counsel retained by the children or an attorney employed in the administration of the estate, *see* R.C. 2113.36 (permitting attorney fees to be paid as administration expense to an attorney employed in an estate's administration). Rather, the GAL served, in essence, as an officer of the court, appointed sua sponte to safeguard the interests of minor beneficiaries, which is a role connected to the probate court's supervisory function.

{¶ 43} The consequence of this distinction is that unlike attorney fees, which typically follow the American Rule's presumption against fee-shifting, guardian ad litem fees are recoverable regardless of the litigation's outcome. *See In re Estate of Jurkoshek*, 2006-Ohio-5881, ¶ 8 (9th Dist.) (holding that fiduciary attorney fees in defending will contests are estate expenses, independent of outcome). This principle reflects the unique nature of probate proceedings, where the court's paramount duty to protect all beneficiaries' interests may necessitate appointment of a GAL, whose service benefits the administration of justice itself, not merely any particular party's position.

{¶ 44} Finally, the Siblings' suggestion that GAL compensation should await the Estate's final accounting defies both practical necessity and common sense. Courts routinely order interim payments to estate, and other, professionals, recognizing that

extended delay in compensation could deter qualified individuals from accepting court appointments. The probate court's decision to authorize contemporary payment of GAL fees thus falls well within its broad discretion to manage estate administration efficiently and fairly.

{¶ 45} In sum, the probate court's order directing payment of GAL fees reflects a proper exercise of its discretion. Neither Ohio's general rules regarding attorney fees nor the specific provisions cited by the Siblings circumscribe the court's inherent power to ensure effective representation of the children's interests through timely compensation of a court-appointed guardian ad litem.

### III. Conclusion

{¶ 46} The Siblings' assignment of error is sustained. The probate court's payment order is reversed, and this case is remanded for further proceedings consistent with this opinion.

BYRNE, P.J., and M. POWELL, J., concur.

- 17 -

---

# J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and this cause is remanded for further proceedings according to law and consistent with the above Opinion.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Probate Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robert A. Hendrickson, Judge

/s/ Mike Powell, Judge